[625 NYS2d 137]

In the Matter of MANOJKUMAR D. PATEL (Admitted as MANOJ KUMAR DAHYABHIA PATEL), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 6, 1995

## APPEARANCES OF COUNSEL

*Sarah Jo Hamilton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Manojkumar D. Patel,* respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

Respondent, Manojkumar D. Patel was admitted to the practice of law in the State of New York on motion by the Second Judicial Department on October 13, 1976 under the name Manoj Kumar Dahyabhia Patel. At all times pertinent to this proceeding respondent maintained an office for the practice of law within the First Judicial Department.

By order of this Court entered October 16, 1990, respondent was suspended from the practice of law pursuant to section 603.4 (e) (1) (ii) and (iii) of the Rules of this Court (22 NYCRR) based upon admissions under oath of serious professional misconduct and other uncontroverted evidence, until such time as disciplinary matters pending against respondent were concluded and until further order of this Court (162 AD2d 61).

On or about May 8, 1990, respondent was served with a notice and statement of charges containing six charges setting forth multiple violations of the Code of Professional Responsibility. After the commencement of the hearings, the Committee was granted leave to add a seventh and then an eighth charge.

In his answers, respondent denied many of the factual allegations and denied that he had engaged in any misconduct.

A Hearing Panel convened and held hearings on 18 different hearing dates commencing on July 19, 1990 and ending on June 24, 1992. A hiatus between August 1990 and December 1990 was occasioned by respondent's absence from New York City.

On June 18, 1992, by letter to the Panel Chair, respondent moved, *inter alia,* to reopen the hearing. That motion was denied orally on the record on June 24, 1992.

After the evidence was closed in the disciplinary hearing and the Panel's decision and recommendation announced, respondent requested that the Panel "hold" its report until respondent made posthearing motions in this Court. Respondent's posthearing motion was made in this Court on December 14, 1993. Respondent requested an order setting aside and vacating the interim order of suspension, reopening the disciplinary hearing and compelling the Hearing Panel to issue its report and recommendation. In support of this motion, respondent asserted that Special Trial Counsel, who conducted the early stages of the relevant proceedings on behalf of the

Committee engaged in illegal dealings with witnesses; that there was insufficient evidence to support the charges against respondent; that he was denied sufficient opportunity to call and cross-examine witnesses; that the Panel and staff counsel were prejudiced against him because of his national origin and that staff and respondent's counsel deliberately engaged in dilatory tactics thereby keeping respondent suspended from the practice of law for an indefinite period of time.

By order (M-6581) entered February 17, 1994, this Court denied respondent's motion.

During the course of the hearings, the following facts were adduced and conclusions reached.

Respondent was born in India and has been a permanent resident of the United States since 1972, having moved here two years earlier. Prior to his admission to practice in New York in 1976, respondent had been admitted to practice law in 1961 by Gujarat High Court, Gujarat State, India, where he had practiced law for approximately 15 years. Because he had been an attorney for five years in a country which followed the English common law, respondent never needed to pass the Bar examination in order to practice law in this jurisdiction.

*Charge One—The Escrow Agreement*

On or about October 27, 1984, while representing Rejendra Goel, respondent entered into a written escrow agreement in settlement of a lawsuit against his client for legal fees, in which he agreed to hold the amount of $690 in escrow pending an adjudication of Mr. Goel's application for legal permanent residency by the Immigration and Naturalization Service.

At the time, respondent did not have an escrow account. Respondent testified that he handled mostly immigration matters and he was unaware of any rule requiring him to hold client funds in a separate account. Respondent did not open up an escrow account until 1986. Instead, he maintained a business account into which he deposited funds which should otherwise have been segregated. Once the checks cleared for payment, the funds would be transferred into respondent's money market account where they would earn interest for respondent's personal benefit.

Despite the terms of the settlement agreement—which respondent had signed—that the $690 was to "be held by defendant's attorney [respondent] in an interest-bearing escrow account in favor of" the law firm of Wildes & Weinberg,

respondent followed his normal practice and deposited these monies in his business account.

Respondent testified that Steven Weinberg, Esq.—the other signatory to the escrow agreement—had orally waived the written agreement's escrow mandate. Respondent further denied that he used any of the $690 for personal purposes.

Respondent's testimony, however, was flatly contradicted by Mr. Weinberg and his associate Daniel Donatelli, the attorney at his firm who handled the matter, each of whom insisted that he had not agreed to the alleged modification and waiver.

As a result of respondent's actions he was charged with engaging in conduct involving dishonesty, deceit and misrepresentation, namely, commingling his clients' funds with his own funds and converting his clients' funds to his own use, in violation of Code of Professional Responsibility DR 9-102 (A), DR 1-102 (A) (4) and conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (A) (6) (now para [8]). Based upon the evidence presented a unanimous Panel concluded that respondent had commingled the escrow funds with his ordinary funds and that he failed to segregate client funds as required by DR 9-102 (A). A majority of the Panel also found that respondent's misconduct was deliberate —that respondent knew he was acting in breach of the settlement agreement and deliberately commingled the funds— thereby constituting conduct that adversely reflects on respondent's fitness to practice law in violation of DR 1-102 (A) (6) (now para [8]). The Panel granted respondent's motion to dismiss the conversion charge.

*Charge Two was Withdrawn by Staff Counsel*

*Charge Three—The Richmond County Matrimonial*

In 1988, respondent was retained by Anjanakumari Patel (who is unrelated to him) to represent her in attempting to vacate a default judgment, entered in favor of her husband in a Richmond County divorce action, and in otherwise defending the action on behalf of Ms. Patel. The client, Ms. Patel, resided in Florida.

Respondent had spoken with the client over the telephone, been paid $300 as a retainer and succeeded in having the default vacated. On December 5, 1988, respondent sent Ms. Patel an affidavit, which he had prepared in support of her application for temporary alimony, child support and attorney's fees. His cover letter did not ask the client to review or comment on the contents of the enclosed affidavit, only to sign

and return the notarized affidavit as soon as possible. Respondent claimed however, that he sent the affidavit to the client to review with a Florida attorney and to make any necessary changes.

The affidavit respondent sent to his client recited that Ms. Patel needed money to travel to New York from New Jersey; that she was a new immigrant, who was not versed in the English language and needed an interpreter or the special assistance of respondent to help her understand what was happening; that her husband was having an affair with another woman and had thrown the wife out from their matrimonial home; that the husband owned property in India; that he did not support his wife or their daughter; and that Ms. Patel was in danger of becoming a public charge. Respondent claimed that these allegations were based upon information given to him by Ms. Patel.

Ms. Patel, however, testified at the hearing that none of these allegations were true. Ms. Patel stated that she lived in Florida, not New Jersey; that she had been raised in England, where she had attended college and worked as a banker, and was fluent in the English language; that she was a United States citizen; that her husband had neither thrown her out of her home nor had an affair; and that he did not own property in India. To the contrary, Ms. Patel's husband had contributed to her support and to that of her daughter throughout the period of their separation. Ms. Patel claimed that she had given all of these facts to respondent in April 1988.

Ms. Patel did not sign the inaccurate December 5 affidavit. Instead, she consulted with a Florida attorney, who drafted a new affidavit which she then signed and had notarized on December 15, 1988, and forwarded directly to respondent.

Respondent, however, had not waited to receive the signed affidavit before serving his motion papers. Instead, without ever confirming with his client that the December 5 affidavit was accurate and satisfactory to her, respondent placed an "s/" on the signature line of a copy of the proposed affidavit—thereby purporting to conform it to a signed original—and, on December 5, 1988 (the same day he had mailed the original to his client), served that misleading copy, together with his notice of motion upon the husband's attorney. Respondent testified that annexing the "conformed" affidavit to the notice of motion was an unintended mistake. However, the Patel affidavit was the only document submitted by respondent in

support of the alimony and custody portions of the motion, respondent having submitted his own affirmation in connection with the request for counsel fees. Without such evidence from the wife supporting the interim alimony and child support claims, that aspect of her motion would certainly have been denied.

Upon receipt of Ms. Patel's signed and notarized affidavit bearing the date of December 15, 1988, respondent was on actual notice that he had served an untrue document on his adversary.

At the time he received the signed December 15 affidavit, respondent had not yet filed his motion papers with the court. He thereupon removed the initial December 5 affidavit from his original notice of motion and replaced it with the new affidavit sworn to on December 15. Respondent then filed the modified motion papers, bearing an affidavit of service in which he falsely swore that, on December 5, 1988, the motion papers (and the attached December 15 affidavit) had been served on his adversary. A copy of the modified motion papers was not served on the husband's attorney.

On January 13, 1989, the husband's attorney, still unaware that the affidavit which had been served upon him had never been signed by Ms. Patel—or that it had been replaced in the original motion papers filed in court—served answering papers which attacked Ms. Patel's "unsigned" affidavit as either misleading or totally false.

On January 14, 1989, after receipt of the husband's opposition, respondent forwarded the December 15, 1988 affidavit to counsel. Rather than disclosing the truth, respondent described the signed affidavit, in an accompanying letter, as a "supplementary" affidavit. Respondent represented that a copy of the letter had been sent to the clerk of the court. A review of the court files, however, failed to disclose the presence of such a letter.

On January 19, 1989, respondent sent Ms. Patel a copy of her husband's answering affidavit. When respondent did not return the several telephone messages Ms. Patel left at his home and office, her Florida counsel wrote to him seeking an explanation for the attacks on her credibility which were contained in the husband's opposing affidavit and querying "what affidavit has been filed in this matter." Respondent was also told to take no further action in the case since Ms. Patel was replacing him with new counsel. Respondent was directed

to forward his entire file to the incoming attorney, whose name and address were given.

When respondent was contacted by Ms. Patel's new counsel, he refused to sign an appropriate consent to change attorneys, thereby compelling new counsel to obtain a court order of substitution. That order also directed respondent to turn over his entire file to his replacement without demanding any fee or charge therefor. Respondent ignored that mandate because he felt that fees were still owed to him. Ms. Patel's new counsel was eventually able to obtain copies of many, if not all, of the relevant documents from the court file and from his adversary.

Respondent never acknowledged his discharge to Ms. Patel. Instead, after that discharge, he wrote to the former client requesting that Ms. Patel send him an affidavit refuting the husband's charges. He also represented that "the calculations of our timesheet" showed that unpaid fees and expenses totalled $3,500 (at $90 an hour) for which he sought payment. When payment was not made, respondent, on February 28, 1989, demanded that these monies be paid in three days, by certified check, or he would commence an action against both Ms. Patel and her husband for "their joint and severalliability *[sic]* for it's *[sic]* payment." In early March, such an action was commenced. In his endorsed complaint, respondent sought judgment against both his former client and her estranged spouse because legal services were rendered "at the specific request of defendants".

At the time of his retention in April 1988, respondent received an initial retainer from Ms. Patel. In July, he was paid an additional $750. Ms. Patel advised respondent that she was short of funds and this $750 check was drawn on the account of Ms. Patel's sister.

In his letter of December 5, 1988, respondent advised Ms. Patel that the $750 check had been lost, and asked her to replace it with a check for $1,000. A second check, in the sum of $750, was sent and deposited. More than a year later, in March 1990—and after the dispute had arisen with respect to respondent's entitlement to greater fees, respondent located the original $750 check. Rather than returning that check, since replaced, to his former client, he deposited it into his bank account. Payment had been stopped on this check, however, and it was returned by the bank.

Respondent testified that he had a right to this second $750

since monies were still owed to him by Ms. Patel for his legal services. However, at the time respondent sought to deposit the $750 check, he knew that Ms. Patel disputed his claim to those additional fees.

As a result of respondent's actions he was charged with engaging in conduct involving dishonesty, deceit, and misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4); abuse of process, in violation of DR 7-102 (A) (2), (5) and (8); contempt of an order of the Supreme Court, Richmond County, in violation of DR 1-102 (A) (5) and DR 7-106 (A); converting his client's funds to his own use in violation of DR 1-102 (A) (4); and conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (A) (6) (now para [8]).

Based upon the evidence presented, the Hearing Panel concluded that respondent repeatedly violated DR 1-102 (A) (4) when he submitted false affidavits to his client, his adversary and to the court, and when he attempted to cover up his own dishonest, fraudulent and deceitful conduct. The Panel further found that respondent violated DR 1-102 (A) (5) and DR 7-106 (A) when he failed to deliver his files to successor counsel as directed by court order; DR 1-102 (A) (6) when he served counsel with an unsigned affidavit, and DR 1-102 (A) (4) when he attempted to convert his client's funds to his own use.

*Charge Four—The Bankruptcy Matter*

On October 24, 1983, respondent filed a complaint, on behalf of two clients, in the United States Bankruptcy Court for the Eastern District of New York, in which he objected to the discharge, in bankruptcy, of certain debtors. This complaint, however, failed to state a cause of action in that it merely alleged that the debtors had defaulted on certain notes given to respondent's clients as consideration for the purchase of their business. The requisite allegation of fraud, sufficiently particularized to satisfy the Federal pleading requirement, was not made. When informed of this defect in his pleading during a pretrial conference, respondent served an untimely amended complaint which reasserted the allegations of the initial complaint and pleaded, in conclusory form, that the underlying transaction had been motivated by some unspecified fraud. The court ultimately ruled that the amended pleading was also deficient. Respondent claimed that he was inexperienced in bankruptcy law.

Prior to that ruling, at a February 7, 1984 conference, the

court adjourned the matter for trial until April 30, 1984 so as to accommodate respondent's planned vacation to India. When neither respondent nor his clients appeared in court on April 30, defendants moved to dismiss the action (a) for plaintiffs' failure to prosecute, (b) for plaintiffs' failure to state a cause of action, and (c) for plaintiffs' failure to plead fraud with particularity. The trial had been adjourned to, and the return date of the dismissal motion was set for, May 17, 1984. On the return date respondent again defaulted, and both matters were put off until June 7, on which date no one appeared from either side. The case was then closed because of respondent's clients' failure to prosecute. In its subsequent opinion, the bankruptcy court found that respondent's conduct reflected a "callous disregard" for the responsibilities he owed to the court and his adversaries in that immediately before leaving for vacation he had served a document demand on his adversary and then promptly closed his office while he travelled to India; by leaving for vacation and not advising his adversary or the court that neither he nor his clients would appear for the April 30 trial; by not ascertaining the status of the case upon his return from vacation; and by defaulting at the June 7 adjourned trial date.

On July 26, respondent communicated with the court for the first time since February 7, 1984 to determine the status of the case. When he learned that it had been closed three weeks earlier, respondent moved to set aside the order of default. In support of this application, he affirmed that he had submitted an application for an adjournment of the April 30, 1984 trial date from India, where he was on vacation, and that this application had been granted and the case adjourned. In his August 10, 1984 reply affirmation respondent also averred that, when the case appeared on a court calendar in March, he had disclosed that he would be on vacation until May 14, 1984.

At the hearing, respondent testified that it was at the February 7, 1984 conference (not the March calendar call) that he had advised the court that he was departing on vacation to India in March and would be unavailable for trial until after his return in May. However, the bankruptcy court stated in its opinion that it would not have scheduled the trial for a date on which respondent would be on vacation. The court also ruled that the statement in respondent's affirmation was untrue since the case had not been calendared for March.

In an affirmation dated December 3, 1984 respondent again

attested that he was in India on April 30, 1984 and that he had mailed an application for adjournment to the court, which the court had received. The court files, however, reflect no such request for adjournment and the bankruptcy court stated in its opinion that it was satisfied that no such request had ever been made.

This conclusion was confirmed by respondent's adversary, also present at the February 7 conference, who testified that respondent had stated that he would be away for the month of March, that the Judge presumed three or four weeks after his return would be sufficient for respondent to prepare for trial, and that all parties then agreed on April 30 as the trial date.

As noted, while respondent was in India, his adversary had moved to dismiss the complaint because of respondent's April 30 default. Respondent denied ever receiving a copy of these motion papers. However, defendant's attorney has sworn not only that he had sent the papers to respondent's office, but that he telephoned that office and left word on his answering machine. On the return date of the motion, which had originally been scheduled to accommodate respondent's vacation plans, an adjournment was granted when respondent failed to appear and defendant's attorney was directed to give respondent written notice of the adjourned date.

In response to that notice, respondent's daughter telephoned defendant's attorney to advise that respondent was still in India. She also stated that respondent would be back prior to the adjourned date. Counsel asked that her father telephone him upon his return from India. Respondent did call and requested that the motion be withdrawn. Counsel refused to do so, but did grant another adjournment. Respondent admitted that these conversations occurred, but attested that he had called his adversary upon his return from India only to discuss when respondent would receive production of previously requested documents. He denied that the motion to dismiss was discussed in any respect. Indeed, he denied having any knowledge of the pendency of that motion in May 1984.

On December 28, 1984, respondent executed an affirmation of service in which he swore that he had served certain motion papers on opposing counsel, by mail on December 28, 1984; and, again, in the same affirmation, that he served those papers by "delivering a true copy thereof to [counsel] personally" on December 31, 1984—three days after the affirmation was purportedly signed. Respondent conceded to the Panel

that, although he intended to mail the motion papers on December 28, 1984, he in fact never did so, instead choosing to attempt personal service. Respondent also admitted that he never made "personal" service on New Year's Eve. Rather, he merely placed the papers in his adversary's mail slot after that office was closed for business by reason of the holiday. Respondent claimed that he believed such service to constitute personal service. Opposing counsel testified that he never received those papers either personally or in his mail box. The bankruptcy court also found that those motion papers were not served on December 31, 1984.

The bankruptcy court's decision was issued on November 27, 1985. In addition to dismissing his clients' complaint as frivolous, the court sanctioned respondent and his clients. The amount of these sanctions approximated $10,500. In dismissing as untimely, an appeal from the order granting sanctions, the Federal District Court noted that respondent's conduct should be reported to the State Bar Association.

During the pendency of an appeal to the Second Circuit Court of Appeals, respondent learned that the sanctions had been paid in full by his clients. He thereupon agreed with his adversary to withdraw his appeal in exchange for general releases.

When questioned about the bankruptcy court's disciplinary complaint, respondent advised the Departmental Disciplinary Committee that the sanction was paid as the result of a negotiated settlement. He did not state that it was the clients, not he, who paid the sanction.

As a result of respondent's actions he was charged with engaging in conduct involving dishonesty, deceit and misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4); engaging in conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5); abuse of process and contemptuous conduct before a Federal court in violation of DR 7-102 (A) (1), (2), (5) and (8); engaging in conduct which adversely reflects upon his fitness to practice law in violation of DR 1-102 (A) (6) (now para [8]).

Based upon the evidence presented the Hearing Panel concluded that respondent, by falsely swearing on four separate occasions that he had been granted an adjournment when he had not, and by submitting two false affirmations of service, had engaged in dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) and (5) and DR 7-102 (A) (5)

and that this pattern of deceit and misrepresentation throughout his dealings with the bankruptcy court demonstrated conduct adversely reflecting upon his fitness to practice law in violation of DR 1-102 (A) (6) (now para [8]).

The Hearing Panel dismissed the portion of Charge Fourwhich alleged that respondent had falsely claimed to the Committee that his appeal from an order of sanction had been settled, and that he had engaged in a pattern of deceit in his dealings with the Committee.

### Charge Five—The Attorney as a Witness

In or about March 1987, respondent had represented the seller of a grocery store business. After this transaction closed, respondent represented the purchaser in the formation of the corporation which would operate the grocery store and in an application for a beer license.

Approximately one year later, when promissory notes had not been paid, respondent commenced a lawsuit against the nominal purchaser to recover on those notes on behalf of the seller.

By commencing an action against his former client when he knew he would be called or it was obvious that he ought to be called as a witness in the case, respondent was charged with engaging in a conflict of interest, in violation of Code of Professional Responsibility DR 5-101 (B).

The Hearing Panel concluded that the Committee failed to prove that at the time respondent commenced the action, he either knew or it was obvious to him that he would be called as a witness in the case. As such, the Panel dismissed this charge.

### Charge Six—The New Jersey Representation

In January 1989, respondent advised one Hareshkumar Patel (no relation) that he was able to maintain an action for divorce on behalf of Mr. Patel in New Jersey. At the time, both Mr. Patel and his spouse resided in New Jersey. Mr. Patel retained respondent and paid him $500 on account of an agreed fee of $1,500. During a meeting to discuss the representation at respondent's home in Jersey City, New Jersey, Mr. Patel gave respondent his marriage certificate and his passport.

A dispute thereafter arose between respondent and his client with regard to respondent's request for additional fees. The client stated that he had learned that respondent was not

licensed to practice law in New Jersey and requested the return of his marriage certificate and passport. Respondent refused to do so unless he was paid another $500. Other than writing a letter to Mr. Patel's wife, respondent had performed no legal services for the client. However, they did meet four times, always in or immediately outside respondent's New Jersey residence—which both Mr. Patel and a friend described as containing an office.

Respondent denied that he was practicing law in the State of New Jersey and claimed that he was retained on an immigration matter, to which the divorce was somehow ancillary. The answering machine at respondent's New Jersey residence, however, advises callers that they had reached respondent's law office. There was also evidence that respondent had placed an advertisement in a New Jersey newspaper listing his New Jersey number. Respondent sought to explain the tape recording by stating that the message was recorded by his son and that respondent was unfamiliar with its content. However, respondent had admitted in his amended answer to the statement of charges that he "at times permitted his home telephone in Jersey City, New Jersey to be answered 'Law Office' for the benefit of immigration clients and otherwise for emergencies."

Respondent further denied that he had ever received Mr. Patel's passport, although he admitted that he had received the marriage certificate and a greeting card from his client.

As a result of respondent's actions he was charged with engaging in dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and in conduct adversely reflecting on his fitness to practice law, in violation of DR 1-102 (A) (6) (now para [8]).

Based upon the evidence presented the Hearing Panel found that respondent was unlawfully practicing law in New Jersey; he violated DR 1-102 (A) (4) when he represented to his client that he could handle the client's divorce action in New Jersey; and that respondent attempted to extort additional fees by refusing to return his client's documents, and thereby violated DR 1-102 (A) (4) and (6). The Hearing Panel noted that New Jersey was not the only jurisdiction in which respondent practiced without authority. In its decision rejecting respondent's attempt to appeal from the aforementioned bankruptcy court order, the United States District Court for the Eastern District of New York noted that respondent had appeared before the court without being a member of its Bar.

*Charge Seven—The Thind Matter*

In August 1987, respondent was retained by Sudarashan Thind to represent her in a landlord/tenant proceeding and in connection with certain child custody problems. She delivered to respondent, at his request, her passport, her school degrees, her children's birth certificates, certain marital documents and other writings relevant to the landlord/tenant proceeding. Sometime later, respondent wrote to his client's estranged husband in California, notifying him of a new date for the client's scheduled visits to her children who were within the custody of their father. At the same time he supplied Ms. Thind with an airline ticket to California which he had received in exchange for a previously purchased ticket. Ms. Thind paid respondent $2,240 in cash. Respondent claimed that this payment did not include reimbursement for the initial $418 airline ticket.

Respondent failed to appear on Ms. Thind's behalf at the hearing in the landlord/tenant case and that action was ultimately dismissed. Respondent then sued Ms. Thind for legal fees allegedly due to him and for the cost of the airline ticket, and, on December 16, 1987, he obtained a default judgment against her in Small Claims Court in the amount of $1,477.89.

On February 24, 1988, Ms. Thind commenced her own action in Small Claims Court for malpractice. During this proceeding, the default judgment was reopened and the two cases were consolidated. On May 23, 1988, after trial, Ms. Thind's action was dismissed and respondent was granted judgment against Ms. Thind in the amount of $50, which judgment was conditioned on the return to Ms. Thind of her documents. The claim for airline tickets was dismissed as unproven. Respondent filed, but never processed, a notice of appeal from that judgment.

When Ms. Thind tried to pay the $50, respondent told her that if she showed up at his office he would call the police. Thereafter, Ms. Thind again sued respondent in Small Claims Court, for money damages caused by his failure to return her documents. She obtained a default judgment which respondent successfully reopened.

Respondent then moved to dismiss Ms. Thind's suit for damages. In his moving affidavit, sworn to on November 15, 1988, respondent stated that he had been granted a "final judgment" in the matter on December 16, 1987 in the amount

of $1,477.89 and that Ms. Thind had failed to pay the judgment. A copy of the judgment was annexed to the affidavit. Nowhere in this affidavit did respondent indicate that this earlier judgment had been reopened and that a new judgment had been entered for only $50 which was itself conditioned upon the return of the very papers Ms. Thind was seeking in her lawsuit. Respondent did annex a copy of that second judgment to his moving paper without, however, making any reference to it in his affidavit. Respondent's motion was thereupon granted.

At the hearing respondent claimed that he never received any documents from Ms. Thind and that her testimony is incredible since she suffers from a mental disorder.

As a result of respondent's actions he was charged with failing promptly to return client property in violation of Code of Professional Responsibility DR 9-102 (B) (4); engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) and engaging in conduct that adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6) (now para [8]).

Based upon the evidence presented, the Hearing Panel concluded that by failing to disclose to the Small Claims Court that a judgment in his favor had been vacated and reduced to $50, payable only upon return of his client's documents, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and engaged in conduct that adversely reflects on his fitness to practice law. Further, by refusing to return his client's property to her, as directed by the court, respondent violated DR 9-102 (B) (4).

*Charge Eight—The Subpoena Matter*

On July 20, 1990, an investigator employed by the Departmental Disciplinary Committee (DDC) served respondent with a subpoena requiring the production, on August 6, 1990, of his files in two bankruptcy cases. Rather than producing his files, respondent wrote to the Panel Chair, on July 24, 1990, asking that the DDC be ordered to cease further disciplinary investigations so as to allow respondent to concentrate on his preparation of a defense against the charges already pending against him. The Panel Chair denied that request. On August 7, 1990, one day after the return date of the subpoena, respondent filed with the Appellate Division, First Department, his motion to vacate the subpoena. Respondent's notice of motion was dated August 6; no stay of the DDC subpoena

was sought. Respondent's motion was denied on November 29, 1990 and, ultimately, respondent produced his file to the DDC.

As a result of respondent's actions he was charged with engaging in conduct prejudicial to the administration of justice by ignoring the direction of the court to produce records, in violation of DR 1-102 (A) (5); and engaging in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (now para [8]).

Based upon the evidence presented the Hearing Panel, by a 4 to 2 vote, determined that the DDC had failed to demonstrate that the aforesaid conduct by respondent constituted a violation of any Disciplinary Rule. As such, this charge was dismissed.

Therefore, the Hearing Panel dismissed Charges Five and Eight, but sustained in whole or in part Charges One, Three, Four, Six and Seven, containing 17 separate violations of the Disciplinary Rules.

On March 31, 1994, the Hearing Panel issued its written report. A majority of the Panel recommended that respondent should be disbarred. The two dissenting members of the Panel recommended a five-year suspension retroactive to the date of respondent's interim suspension (Oct. 16, 1990).

By petition dated June 30, 1994, the Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the majority's recommendation of disbarment. Staff counsel further refers this Court to new information which was not available during the disciplinary hearing and which is relevant to the issue of sanction. Counsel states that sometime in the fall of 1993, respondent commenced an action against the Disciplinary Committee, all other counsel and two Federal Bankruptcy Court Judges connected with the disciplinary proceedings, claiming that he was the victim of false, frivolous and baseless accusations. In the very first paragraph of each complaint, respondent alleges that he "maintains an office (Law) at the present time at 303 Fifth Avenue, Suite 811, New York, New York". Counsel points out that respondent was suspended from the practice of law in October 1990. At that time his law office was located at 1225 Broadway, Suite 414, New York, New York. He maintained that office at least until June 1992. According to counsel, respondent has relocated since he was suspended and yet apparently still claims to maintain an office for the practice of law. Counsel states that if true, this constitutes

disbarable misconduct without regard to the present charges. If not true, such a claim, is proof of the sort of incompetence on which the Panel remarked. In either case, counsel claims it is evidence in aggravation which should be taken into account.

By supplemental affirmation dated November 17, 1994, the Committee further advises that a letter was forwarded to the Disciplinary Committee from the Honorable Louis J. Marrero, Justice of the Supreme Court, Richmond County, concerning respondent. In his letter Justice Marrero sets forth facts indicating that despite respondent's suspension from the practice of law, he is brazenly continuing to render legal advice to former clients. Additionally, in a motion for legal fees, submitted to the Richmond County Supreme Court, respondent admits accompanying his "former" client to court. Staff counsel asserts that these facts constitute further evidence that respondent is unfit to practice law.

By cross motion (M-5027) dated September 29, 1994, respondent seeks an order disaffirming the Hearing Panel's report; reopening the hearing; and vacating the interim order of suspension and immediately reinstating him to the practice of law. In support of his cross motion, respondent reviews each of the charges and contends that there is insufficient evidence to support the findings that he has engaged in professional misconduct. Respondent claims that the complaints were filed against him by his adversaries and clients in retaliation and are the result of discrimination against him because he is an Asian Indian American immigrant. In response to the Committee's charge that he has been practicing law in violation of the order of suspension, respondent denies that he has been practicing law. With respect to the matter referred to the Committee by Justice Marrero, respondent contends that the client retained new counsel and he did not give legal advice on the merits of the case after his suspension. Respondent claims that the client asked him to stay in court during a hearing on the matter and he sat is the last row of the courtroom during that proceeding. When respondent could not hear and asked the interpreter to speak up, he was asked to leave the courtroom which he did.

Respondent asks that this Court take into consideration the severe hardship, punishment and victimization he has suffered since the date of his suspension and throughout the disciplinary proceeding. Respondent requests that he be immediately reinstated to the practice of law without any further proceedings or conditions.

In addition to his cross motion, respondent has filed three separate motions. Motion No. 4044 seeks an order vacating the Hearing Panel's report, appointing a Special Referee, directing a new hearing be held and vacating the order of suspension. In support of this motion respondent contends that he was denied a fair hearing, he did not have sufficient opportunity to examine his own witnesses and to cross-examine staff's witnesses, his retained attorney was not competent and faithful to respondent, and the Hearing Panel promised respondent could recall a witness for further cross-examination and then the witness was not recalled.

By motion No. 4192, respondent seeks an order directing an investigation and inquiry into the gross misconduct by Disciplinary Committee attorneys. Respondent contends that the attorneys abused their power, adjourned the hearings in order to find witnesses, delayed the hearings so as to prolong his period of suspension without resolving the charges and discriminated against him because of his race.

By motion No. 4193, respondent seeks an order setting aside the Hearing Panel's report, reopening the hearing and vacating the order of suspension because the hearing was incomplete, he was not permitted to cross-examine witnesses, that special counsel for the Committee submitted false affidavits by witnesses to the Panel, that once the suspension was ordered the Panel slowed down the hearings and prolonged the process and he was not given an opportunity to prepare a defense.

A review of the evidence presented to the Hearing Panel indicates that there is ample support for the Hearing Panel's findings that respondent has engaged in serious professional misconduct involving at least 17 separate violations of the Code of Professional Responsibility. Specifically, respondent is guilty of five counts of violating Code of Professional Responsibility DR 1-102 (A) (4), which included 13 separate instances of misrepresentation to a court, to counsel, and one instance of attempted conversion, and one instance of extortion; one count of violating DR 9-102 (A) involving commingling; one count of violating DR 9-102 (B) involving failure to return client property; five counts of violating DR 1-102 (A) (6) (now para [8]), involving conduct adversely reflecting on respondent's fitness to practice law; three counts of violating DR 1-102 (A) (5) involving conduct prejudicial to the administration of justice; and two counts of violating DR 7-102 (A) (5) involving knowingly making false statements of law or fact.

Respondent's claim that insufficient evidence was presented to support the Hearing Panel's findings is merely a rehash of the defenses he raised to the charges during the hearings before the Hearing Panel. These defenses were considered by the Hearing Panel and properly rejected due to the fact that respondent's testimony was inconsistent and incredible. Respondent's further claims, raised in his various motions, are also without merit. A review of the hearing minutes indicates that respondent was represented by competent counsel throughout the proceeding and was given ample opportunity to present his case.

Turning to the issue of sanction, respondent's continuous pattern of deceit and misrepresentation and his lack of remorse and apparent inability to comprehend the seriousness of his misconduct warrants the sanction of disbarment, as recommended by a majority of the Hearing Panel (see, Matter of Friedman, 196 AD2d 280 [1st Dept 1994] [where this Court disbarred an attorney for several acts of intentional dishonesty, including the filing of a knowingly false and misleading affidavit, and the solicitation of false testimony from a fact witness]).

Accordingly, the Disciplinary Committee's petition to confirm the Hearing Panel's findings of fact and conclusion of law is granted. Respondent's cross motion and the three additional motions he filed in this proceeding are denied in their entirety. Respondent is disbarred and his name ordered stricken from the roll of attorneys in the State of New York.

While ordinarily this Court would take into consideration the fact that respondent has been suspended on an interim basis by order of this Court entered October 16, 1990, and perhaps, make the order of disbarment retroactive to that date, we do not do so here due to the fact that evidence has been presented indicating that respondent has been practicing law in violation of the order of suspension.

SULLIVAN, J. P., ROSENBERGER, RUBIN, ASCH and WILLIAMS, JJ., concur.

Petition granted, and respondent's name directed to be struck from the roll of attorneys and counselors-at-law in the State of New York, effective April 6, 1995, as indicated. Cross petition and cross motions are denied in all respects.