OPINION OF THE COURT
Martin E. Ritholtz, J.
At first glance, the instant motion pursuant to CPLR 3126 to dismiss plaintiffs’ complaint based on an alleged willful failure *215 to produce the bicycle involved in the subject accident of June 14, 1995 for inspection and testing, and plaintiffs’ response that said bicycle had long been thrown out, would present a classical spoliation issue fact pattern. What complicates the matter is that over a year ago the movants herein previously moved to strike this action from the Trial Calendar, alleging that an inspection of the subject bicycle had not yet been held, and plaintiffs’ counsel castigated movants by calling the motion “ridiculous” since “they can examine the bike at any time.” The quandary before the court is whether counsel’s previous affirmation attesting that the subject bicycle could be inspected in December 1997 is binding on plaintiffs, and that the present hearsay affirmation should therefore be disregarded, resulting in the dismissal of the action, either as a CPLR 3126 sanction or as a spoliation sanction. On the other hand, if the December 1997 representation by plaintiffs’ counsel is not binding, and the court finds that the subject bicycle was in fact thrown out shortly after the accident, it may very well be argued that the severe sanction of dismissal is unwarranted, and that a monetary sanction levied personally against counsel for misrepresentation would be appropriate. Many conflicting published opinions have been rendered on submitted motions addressing the aforementioned issues, but the court finds that, for the reasons stated below, a multipurpose hearing is mandated, and that a perfunctory determination, although expedient, would not serve the interests of justice.
BACKGROUND
The indorsed complaint, dated December 20, 1996, alleges that on June 14, 1995, the then nine-year-old infant plaintiff Keren Joy Klein was caused to be thrown from her bicycle when the tire got stuck in the defective sidewalk located in front of the residence of defendants Nacool and Pramilla Seenauth, thereby causing her serious injuries. On May 19, 1997 the defendants impleaded the third-party defendant City of New York.
An examination before trial of the infant plaintiff was held on July 16, 1997, who testified as follows:
“I was riding my bike in the street and then a car was coming, so I went on the crosswalk and I went to the sidewalk and then I fell down because the bumps on the tire, the grooves got stuck in there and I fell down.
“Question: Got stuck where?
*216 “Answer: In between this, and there was like a gap and the mountain bikes have like little things that got stuck inside there.
“Question: So you were on a mountain bike?
“Answer: Yes.
“Question: One of the knobs on the tires got stuck in the sidewalk?
“Answer: Yes.
“Question: And that caused you to fall down?
“Answer: Yes” (transcript, at 7, line 21 — 8, line 13).
When asked what kind of bicycle she was riding, the infant plaintiff identified it as a “Sahara Huffy” (id., at 33, line 3). Interestingly, said infant plaintiffs father, Lewis Klein, the second named plaintiff in this action, submitted a sworn correction on September 8, 1997, indicating that the subject bicycle was a “16” Ross Bike pedal brakes no gears.”
On November 19, 1997, plaintiffs filed a notice of trial and certificate of readiness, and on December 15, 1997 the defendants/third-party plaintiffs moved to strike said notice, contending that they “have not yet had the opportunity to examine the bicycle involved in the accident.” In opposition, Bruce Provda, Esq., trial counsel to Beth J. Schlossman, Esq., attorney for plaintiff affirmed “under penalties of perjury” on December 22, 1997 that “If defendants want to examine the bicycle, let them examine the bike. They are going to find absolutely nothing, but a standard child’s bike and to ask to strike the Notice of Trial because they have not had an opportunity to examine the bike, is ridiculous. They can examine the bike at any time. They were advised of that and they are not going to find anything out of the ordinary.” On February 2, 1998, the court granted the motion, striking the action from the Trial Calendar, on the grounds that “the inspection of the subject bicycle * * * has yet to be held.”
It appears that subsequent to the aforementioned order, movants sent four good-faith letters (dated Mar. 11, 1998, Apr. 23, 1998, Apr. 29, 1998 and Aug. 20, 1998) demanding an inspection of the subject bicycle, to no avail.
On December 10, 1998, defendants/third-party plaintiff's moved herein pursuant to CPLR 3126 to dismiss plaintiffs’ complaint with costs on the grounds that plaintiffs wilfully failed to produce the subject bicycle for inspection and testing. In opposition, plaintiff Lewis Klein submitted an affidavit dated January 25, 1999, indicating that on June 14, 1995, he had *217 been divorced from the infant plaintiffs mother and was not residing with said infant plaintiff. He further attested that “I was able to ascertain that her mother, a short time after the accident, either prior to my attorney commencing suit or at a point in time after suit had commenced, threw out the bicycle in question as the bicycle was no longer functioning because of the accident.” Bruce Provda, Esq., also submitted an affirmation in opposition, dated January 28, 1999, stating “Partially it is my fault that I did not communicate with my clients sooner concerning the status of the bicycle and if I had communicated with them sooner, I would have been more alert to the fact that the bike had long been thrown out by the child’s mother and as such, is not available at any time for inspection.”
ANALYSIS
In a recent Appellate Division, Second Department, decision it was held that: “Separate and apart from CPLR 3126 sanctions is the evolving rule that a spoliator of key physical evidence is properly punished by the striking of its pleading” (see, DiDomenico v C & S Aeromatik Supplies, 252 AD2d 41, 53; see also, Hill v Douglas Elliman-Gibbons & Ives, 256 AD2d 31). Besides the availability of the extreme CPLR 3126 and/or spoliator sanctions of dismissal, the court may, in the alternative, impose monetary sanctions pursuant to CPLR 3126, or award costs and financial sanctions for frivolous conduct in civil litigation, pursuant to 22 NYCRR subpart 130-1 (see, Taub v Wulwick, 168 AD2d 492; Gabrelian v Gabrelian, 108 AD2d 445). Under the circumstances herein, the court also feels compelled to comment on relevant ethical considerations, including one of the recently promulgated standards of the New York State Standards of Civility (22 NYCRR part 1200, Appendix A). Finally, certain evidentiary considerations preclude a summary disposition of this motion, and as will be explained, a multipurpose hearing is mandated.
I. CPLR 3126 Sanctions of Preclusion and Dismissal
It is well settled that the overriding objective of CPLR article 31 is not punitive but, rather, the liberal and full disclosure of all evidence which is rational and necessary or relevant to the issues to be tried (see, Miller v Duffy, 126 AD2d 527, 528). In pertinent part, CPLR 3126 provides that a court, in its discretion, may impose a variety of sanctions upon a party who either (a) “refuses to obey an order for disclosure” or (b) “wilfully *218 fails to disclose information which the court finds ought to have been disclosed”. It has been noted that “[t]his section is not a procedure to punish for contempt but one to insure that disclosure procedures are not frustrated” (see, 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 3126.05). There have been conflicting decisions as to the appropriate sanction pursuant to CPLR 3126 for the discarding of evidence. In a case similar to the facts at hand, a party did not promptly move, upon receipt of an adversary’s disclosure notice, for a protective order, and a negative inference was drawn that the requested evidence was discarded after the receipt of the notice, resulting in the imposition of an unconditional order of preclusion, pursuant to CPLR 3126 (see, Ferraro v Koncal Assocs., 97 AD2d 429). Another case where a plaintiffs attorney delayed in revealing that the requested evidence was no longer available resulted in the severe sanction of dismissal of the complaint, pursuant to CPLR 3126 (see, Sawh v Bridges, 120 AD2d 74, appeal dismissed 69 NY2d 852). Eventually, the harsh sanctions of preclusion and dismissal were imposed pursuant to CPLR 3126 in instances where evidence was discarded before a formal notice or order to produce was served, or, for that matter, even before the commencement of the litigation, and these cases served as a bridge to the newly evolved and separate spoliation doctrine (see, Brown v Michelin Tire Corp., 204 AD2d 255; Strelov v Hertz Corp., 171 AD2d 420; General Acc. Ins. Co. v American Honda Motor Co., NYLJ, June 19, 1995, at 28, col 3 [App Term, 1st Dept]). There are an equally abundant number of cases that have denied sanctions, citing insufficient evidence in the record of a wilful, contumacious or bad-faith failure to comply with discovery, and in the absence of a clear-cut showing of wilfulness, the extreme and drastic sanction of striking a party’s pleading was found to be unwarranted (see, e.g., Orlando v Arcade Cleaning Corp., 253 AD2d 362; Ashline v Kestner Engrs., 219 AD2d 788; Prasad v B.K. Chevrolet, 184 AD2d 626; Forman v Jamesway Corp., 175 AD2d 514; Dauria v City of New York, 127 AD2d 459).
Instead of arbitrarily adopting one of the conflicting positions, the court finds that a hearing is necessary to determine whether the subject bicycle was wilfully discarded or destroyed to frustrate movant’s interests, and whether less drastic remedies than the extreme sanction of dismissing plaintiffs complaint should be considered (see, Vaughn v City of New York, 201 AD2d 556). Such a “Vaughn hearing” shall satisfy the requirements of CPLR 3126, and involve different criteria then *219 those applicable to the other spoliation and frivolous litigation issues.
II. CPLR 3126 Monetary Sanctions
It has long been held that “an attorney’s neglect * * * should not deprive his client of his day in court; and that it is proper to save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect”. (See, Moran v Rynar, 39 AD2d 718, 719; also see, Matter of Eagle Ins. Co. v Velasquez, 253 AD2d 495; Nicholos v Cashelard Rest., 249 AD2d 187; Sanchez v Javind Apt. Corp., 246 AD2d 353; Pollack v Eskander, 191 AD2d 1022; Martinisi v Cornwall Hosp., 177 AD2d 549; Belsky v Lowell, 117 AD2d 575; Epstein v Lenox Hill Hosp., 108 AD2d 616; Paoli v Sullcraft Mfg. Co., 104 AD2d 333; Jette v Long Is. Jewish-Hillside Med. Ctr., 61 AD2d 808). CPLR 3126 is particularly suited to penalizing law office failure by requiring plaintiffs attorney to personally pay a monetary sanction to defendants as a condition for nondismissal, and in many instances such a financial penalty constituted a sufficient sanction (see, e.g., Anzalone v Scientific Exterminating Servs. Corp., 163 AD2d 348; Bermudez v Laminates Unlimited, 134 AD2d 314; Rosner v Blue Channel Corp., 131 AD2d 654). Whether the infant plaintiff in this action should be nonsuited for any neglect that may be attributed to her counsel, or whether the imposition of monetary sanctions is an appropriate alternative, shall also be addressed at the aforementioned Vaughn hearing.
III. Spoliation Sanctions
It has long been the rule that spoliators should not benefit from their wrongdoing, as enunciated by “the favorite maxim of the law, omnia presumuntur contra spoliatorem” (1 Chitty, Smith’s Leading Cases 404 [13th ed 1929]; see, West v Goodyear Tire & Rubber Co., 167 F3d 776 [2d Cir]; Kronisch v United States, 150 F3d 112, 126 [2d Cir 1998]). Recent developments show that the “spoliator beware” trend has matured into an independent doctrine (see, Hoenig, Products Liability, Spoliation Update, NYLJ, Feb. 15, 1996, at 3, col 1). Succinctly stated, the evolved doctrine provides that “ [spoliation sanctions are appropriate where a litigant, intentionally or negligently, disposes of crucial items of evidence involved in an accident before his or her adversary had an opportunity to inspect them” (Abar v Freightliner Corp., 208 AD2d 999, 1001, citing Hoenig, Products Liability, More on Spoliation; Practice *220 Pointers, NYLJ, Aug. 8, 1994, at 3, col 1). Although spoliation was originally defined as the intentional destruction of evidence arising out of a party’s bad faith, it has been extended to the nonintentional destruction of evidence (see, Kirkland v New York City Hous. Auth., 236 AD2d 170, 173). The most recent appellate restatement of the spoliation doctrine distinguishes it from CPLR 3126 sanctions in that it “has been applied even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided it was on notice that the evidence might be needed for future litigation” (see, DiDomenico v C & S Aeromatik Supplies, 252 AD2d, supra, at 53). The severe sanction of dismissal was imposed summarily without a hearing in many recent spoliation cases based on the negligent loss of a key piece of evidence (see, e.g., Liz v Zinsser & Co., 253 AD2d 413; Squitieri v City of New York, 248 AD2d 201; Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin Air Conditioning Corp., 221 AD2d 243; Thiele v Oddy’s Auto & Mar., 906 F Supp 158). There have also been recent cases where notwithstanding spoliation, the court summarily denied the imposition of sanctions, deeming them inappropriate. (See, e.g., Popfinger v Terminix Intl. Co. Ltd. Partnership, 251 AD2d 564; McAllister v Renu Indus. Tire Corp., 202 AD2d 556.)
Separate and apart from the Vaughn hearing, the court finds that a “spoliation hearing” is warranted under the circumstances herein to not only determine when the subject bicycle was discarded, but more particularly, to ascertain whether the plaintiffs were on notice that the evidence might be needed for future litigation.
IV. Frivolous Conduct — Costs and Financial Sanctions
In its discretion, a court may award costs and financial sanctions against an attorney resulting from frivolous conduct. Conduct is frivolous if “it asserts material factual statements that are false” (22 NYCRR 130-1.1 [c] [3]). Costs, in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees, may be awarded to an attorney (see, 22 NYCRR 130-1.1 [a]). In addition, financial sanctions may be imposed, payable by an attorney to the Lawyers’ Fund for Client Protection (see, 22 NYCRR 130-1.3). An award of costs or the imposition of sanctions may be made upon the court’s own initiative, after a reasonable opportunity to be heard (22 NYCRR 130-1.1 [d]). At such a hearing, in determining whether the conduct undertaken was frivolous, the court shall consider, *221 (1) the circumstances under which the conduct took place, including the time available for investigating the factual basis of the conduct, and (2) whether or not the conduct was continued when its lack of factual basis was apparent, or should have been apparent. (See, 22 NYCRR 130-1.1 [c].) Under the circumstances herein, a frivolous conduct sanction hearing is warranted where plaintiffs’ counsel cavalierly affirmed on December 22, 1997 that defendants may examine the subject bicycle “at any time”, and forestalled discovery by ignoring various demands over the course of the following year, and only in response to the instant motion to dismiss did he first reveal in another affirmation dated January 28, 1999 that the subject bicycle had long been thrown out. If after conducting the Vaughn and spoliation aspects of the hearing it is determined that the subject bicycle had in fact been discarded shortly after the accident in 1995, plaintiffs’ counsel will have to explain why in his affirmation of December 22, 1997, made under penalty of perjury, he asserted a material factual statement that was false.
Accordingly, as part of the multipurpose hearing to be scheduled herein, plaintiffs’ counsel shall be afforded a reasonable opportunity to be heard, so as to enable the court to determine what, if any, penalty should be imposed on him for the aforementioned frivolous conduct (see, Morrison v Morrison, 246 AD2d 634; Bosco v U-Haul, 244 AD2d 373; Gossett v Firestar Affiliates, 224 AD2d 487; Walker v Weinstock, 213 AD2d 631; Eirand v Maori, 213 AD2d 585; Breslaw v Breslaw, 209 AD2d 662; Matter of Gordon v Marrone, 202 AD2d 104).
V. Ethical Considerations and the New Standards of Civility
It is the ethical responsibility of every lawyer to maintain the integrity and improve the competence of the Bar to meet the highest standards (Code of Professional Responsibility EC 1-1). A lawyer is an officer of the court and, as such, has a high duty to maintain the dignity of the legal system (see, Bennett v Martoche, 123 Misc 2d 874). Canon 1 of the Code prohibits an attorney from engaging in misrepresentation (Code of Professional Responsibility DR 1-102 [A] [4] [22 NYCRR 1200.3 (a) (4)]). “An attorney is to be held strictly accountable for his statements or conduct which reasonably could have the effect of deceiving or misleading the court in the action to be taken in a matter pending before it. The court is entitled to rely upon the accuracy of any statement of a relevant fact unequivocally made by an attorney in the course of judicial proceedings.” *222 (See, Matter of Schildhaus, 23 AD2d 152, 155-156; also see, Matter of Friedman, 196 AD2d 280, 296; Matter of Rotwein, 20 AD2d 428, 430.) These ethical reminders are not being mentioned for the purpose of instituting disciplinary proceedings (cf., Matter of Kramer, 235 AD2d 87; Matter of Patel, 209 AD2d 100). If deemed necessary, financial sanctions will suffice. Instead, the court is compelled to admonish members of the Bar that the mere avoidance of monetary sanctions is not the standard to be fostered. It is our collective duty to always remember that “A lawyer should maintain high standards of proper conduct and should encourage other lawyers to do likewise” (Code of Professional Responsibility EC 1-5).
Admittedly, the recently promulgated New York State Standards of Civility were not intended as rules to be enforced by sanction or disciplinary action. Nevertheless, they are a set of guidelines intended to encourage Judges and lawyers to observe principles of civility, and to confirm the legal profession’s rightful status as an honorable and respected profession where courtesy and civility are observed as a matter of course (see, 22 NYCRR part 1200, Appendix A, Preamble). Specifically applicable herein is Standard IX, “Lawyers should not mislead other persons involved in the litigation process.” (22 NYCRR part 1200, Appendix A.)
VI. Evidentiary Considerations — Hearsay and Credibility
The affirmations of the plaintiff father, Lewis Klein, and his counsel, Bruce Provda, Esq., in opposition to the instant motion, alleged that the infant’s mother discarded the subject bicycle, which is hearsay. At the scheduled hearing, if so advised, said mother should be subpoenaed and present her own testimony.
Both the infant plaintiff and her father at said hearing should also address the discrepancy between the description of the subject bicycle attested by the infant, i.e., a Sahara Huffy mountain bike, with knobby tires, handle brakes and gears, and the sworn correction given by the father, to wit: a 16-inch Ross bike with pedal brakes and no gears.
Finally, the fact that plaintiffs counsel affirmed on December 22, 1997 that the subject bicycle was in existence, and changed his testimony over a year later on January 28, 1999 presents a question of credibility that warrants a hearing. (See, Healy v Firestone Tire & Rubber Co., Bridgestone/Firestone, 212 AD2d 351.)