■ James Blake et al., Appellants, v Satish K. Chawla et al., Respondents, et al., Defendants. [750 NYS2d 121] —In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from (1) an order of the Supreme Court, Queens County (LaTorella, J.), dated April 24, 2000, which, after a hearing, granted the motion of the defendants Satish K. Chawla and Nasser K. Ghassemi to dismiss the complaint insofar as asserted against them based upon the plaintiffs' failure to disclose certain witness information, and (2) a judgment of the same court entered July 12, 2000, which dismissed the complaint insofar as asserted against those defendants.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondents.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with entry of the judgment in the action (*see Matter of Aho,* 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

On October 4, 1993, the plaintiff James Blake (hereinafter the injured plaintiff) was admitted to the defendant St. Joseph's Hospital (hereinafter St. Joseph's) after complaining of abdominal pain. The defendants Satish Chawla (hereinafter Dr. Chawla) and Nasser Ghassemi (hereinafter Dr. Ghassemi) were physicians employed by St. Joseph's who diagnosed the injured plaintiff as suffering from an acute appendicitis, and recommended exploratory surgery.

The plaintiff Karen Blake (hereinafter Mrs. Blake), the injured plaintiff's wife, had her husband transferred to Parkway Hospital (hereinafter Parkway) on October 5, 1993, to have Dr. Michael Reich, the Director of Surgery, perform the recommended surgery. Dr. Reich had previously performed surgery on Mrs. Blake.

Upon the injured plaintiff's arrival at Parkway's emergency room (hereinafter the ER), he was first seen by Dr. Sheldon Green who was employed by Parkway as an ER house staff

physician. Green was also an attorney who was admitted to the practice of law in this state in 1991. During the injured plaintiff's stay in the ER, a CAT scan indicated that he had a perforated appendix. Dr. Reich performed surgery on the injured plaintiff on October 6, 1993, and the injured plaintiff was released from Parkway on October 17, 1993.

On January 8, 1994, the injured plaintiff and his wife (hereinafter the plaintiffs) signed a retainer agreement for Green to commence this medical malpractice action with respect to the events surrounding the injured plaintiff's perforated appendix. The retainer agreement indicated that it was "[t]o S. Green, M.D., J.D." regarding personal injuries. Green joined the law firm of Wolf and Fuhrman (hereinafter the Wolf firm) after the retainer agreement was signed, and also remained a full-time employee of Parkway.

In February 1994 the Wolf firm commenced this action against St. Joseph's and Drs. Chawla and Ghassemi (hereinafter the defendants) on behalf of the plaintiffs, wherein the plaintiffs alleged, among other things, that the defendants were responsible for the injured plaintiff's ruptured appendix, which occurred before his transfer to Parkway, and that such rupture was the proximate cause of his subsequent development of an incisional hernia, bowel obstruction, and accompanying sequelae. Neither Parkway nor Dr. Reich were named as defendants in the action.

On October 19, 1994, the plaintiffs served the defendants with a verified bill of particulars, responses to combined demands, and other various demands. Annexed to such papers was a verification signed by Green, wherein he affirmed that "he [had] read the contents of the foregoing and that it [was] true to his own knowledge, except as to the matters herein stated to be alleged on information and belief and that as to matters [he] believe[d] to be true." In the plaintiffs' responses to discovery demands, the plaintiffs maintained, among other things, that they did not consult with any physicians other than those who were listed therein and those physicians who rendered care and treatment to the injured plaintiff at Parkway and St. Joseph's. The plaintiffs also indicated in their combined responses that they had no knowledge of any witnesses to the instant matter other than their children and Mrs. Blake. Green was not listed as a witness to the incident or as a treating physician.

The action was discontinued as to St. Joseph's prior to trial. The Supreme Court commenced a pretrial hearing, outside the presence of the jury, on in limine matters, including the

proposed testimony of Green, who had been subpoenaed by counsel for Dr. Chawla, in light of the alleged ethical issues raised by Green's involvement in the case.

At the hearing, counsel for Dr. Chawla informed the trial court that he just learned that same morning from Green that Green had seen the injured plaintiff in the Parkway ER, and that Green made notes in the ER record. At the time of the hearing, Green was still a full-time employee at Parkway. However, he was no longer affiliated with the Wolf firm, which remained the plaintiffs' attorney of record.

At the hearing, Green testified that he worked in the Parkway ER on the day that the injured plaintiff was admitted. He also stated that he wrote certain notes in the injured plaintiff's ER record in accordance with the instructions of Dr. Reich. Green also indicated that he wrote a diagnosis and other notes in the ER record. Green's name did not appear anywhere on the ER record. However, Green's initials, which were barely legible, appeared on the ER record. The Supreme Court found, as a matter of law, that Green was a treating physician.

Green also testified that he never spoke with the plaintiffs with respect to commencing a medical malpractice action before they signed the retainer agreement. When the Supreme Court asked Green if his name appeared on the retainer agreement, Green answered in the negative and indicated that the agreement was signed for the Wolf firm. However, the Supreme Court was handed a copy of the retainer agreement which indicated that it was executed only in the name of Green, as attorney.

In addition, Green stated that he asserted an attorney's lien in the action in January 1999, upon his separation from the Wolf firm. He acknowledged that he never made an assessment of the propriety of care that was rendered by Parkway and Dr. Reich, and did not consider the possibility that those parties could be joint tortfeasors before the plaintiffs signed the retainer agreement. In fact, Green indicated that he made no assessment regarding the defendants, Parkway, or Dr. Reich, since he was employed by the Wolf firm as a "defense attorney." However, the Supreme Court noted that the Wolf firm handled both plaintiff and defense cases. Further, Green indicated that he did not consider Parkway and Dr. Reich as possible defendants as he "he barely knew the ABCs of the law."

Green also acknowledged that he defended and conducted depositions in the case, including those of the plaintiffs and Dr. Ghassemi, and that he was a Parkway employee throughout

the course of his representation of the plaintiffs. In addition, Green indicated that he contacted Dr. Reich to obtain an affidavit in the case and to secure his services as an expert.

A portion of Mrs. Blake's July 19, 1995, deposition transcript was read into the record, where the question posed to her was "Did Dr. Green ever treat your husband professionally?", and her answer was "no." Although Green was present at this deposition, he did not correct that misstatement or disclose the fact that he treated the injured plaintiff in the Parkway ER.

After the hearing, the defendants moved to dismiss the complaint due to the plaintiffs' failure to disclose the fact that Green was a treating physician, and that he had made notes in the ER record. The Supreme Court granted the motion. The Supreme Court found, among other things, that a material issue in the case was the condition of the injured plaintiff upon his arrival at the Parkway ER, and that the failure to disclose the fact that Green was a witness to the res gestae and an ER physician hindered the defendants in preparing a defense. Thereafter, the Supreme Court dismissed the complaint and discharged the jury. On July 12, 2000, the Supreme Court entered judgment in favor of Drs. Chawla and Ghassemi dismissing the complaint insofar as asserted against them for the plaintiffs' failure to disclose witness information.

Pursuant to CPLR 3126, the Supreme Court has the discretion to dismiss an action where the plaintiff's failure to comply with discovery is willful, contumacious, or due to bad faith (*see Yona v Beth Israel Med. Ctr.*, 285 AD2d 460; *Birch Hill Farm v Reed*, 272 AD2d 282; *Amato v County of Westchester*, 243 AD2d 593). Absent an improvident exercise of discretion, a court's determination to impose sanctions for conduct which frustrates the disclosure scheme of the CPLR should not be disturbed (*see Miller v Duffy*, 126 AD2d 527, 528).

Although the Supreme Court did not explicitly conclude that Green's failure to comply with discovery was willful, contumacious, or in bad faith, Green's continued failure to provide disclosure and the failure to offer any excuse supports an inference that such failure was willful, contumacious, and in bad faith (*cf. Birch Hill Farm v Reed, supra*; *Ranfort v Peak Tours*, 250 AD2d 747).

Green, as the attorney in the Wolf firm who prosecuted this matter, defended and conducted depositions, prepared the plaintiffs' responses to discovery demands, and procured Dr. Reich's services as an expert. Although Green signed the verification, which indicated that the contents of the plaintiffs' responses to discovery demands were true to his own knowl-

edge, he affirmatively misrepresented the identity of the witnesses in this case. Although he was a witness to the res gestae, as well as a treating physician, the plaintiffs' discovery response did not provide such information. In addition, he did not disclose until the eve of trial, the fact that he made notes in the ER record.

In addition, the implausible testimony regarding Green's alleged failure to name Parkway and Dr. Reich as defendants, his inconsistent testimony regarding, inter alia, the signing of the retainer agreement, and the nature of the Wolf firm's law practice also support an inference of willful and contumacious conduct.

Further, while Green was in a position to correct Mrs. Blake's misstatement at her July 1995 deposition that he did not treat her husband, he failed to do so. Green had numerous opportunities to comply with disclosure and to disclose his involvement in the case, and made a conscious decision not to do so.

The Wolf firm, which claimed that it did not know that Green was a potential witness in this case, possessed certain information to place it on notice of such a possibility. The firm was aware that Green was a Parkway employee at the time that the retainer agreement was executed and during his affiliation with the firm in its representation of the plaintiffs. Further, the Wolf firm was aware that Green contacted Dr. Reich to secure his services as an expert witness.

The Supreme Court correctly noted that a material issue in this case was the condition of the injured plaintiff upon his arrival at the Parkway ER. Green saw the injured plaintiff upon his arrival and observed his physical condition. Although Parkway and Dr. Reich provided treatment, they were not named as defendants in the case. By failing to disclose Green's involvement in the case until the eve of trial, the defendants were severely prejudiced in preparing an adequate defense. Accordingly, the Supreme Court providently exercised its discretion in dismissing the action insofar as asserted against Drs. Chawla and Ghassemi for the plaintiffs' failure to disclose witness information (*see Yona v Beth Israel Med. Ctr., supra; Birch Hill Farm v Reed, supra; Amato v County of Westchester, supra*). Feuerstein, J.P., S. Miller, Krausman and Cozier, JJ., concur.