OPINION OF THE COURT
Martin E. Ritholtz, J.
The questions involved in this action are whether there should *515 be any consequences to plaintiffs who commenced a litigation, waged for several years, but failed to preserve and safeguard the documents necessary to provide responses to defendants during discovery, and what ramifications and/or sanctions should flow from the failure. This opinion also raises novel issues regarding the issuance of attorney’s fees under (22 NYCRR) part 130 of the Rules of the Chief Administrator of the Courts, governing the award of costs and the imposition of financial sanctions for frivolous conduct in civil litigation.
I. The Facts
The facts could be condensed as follows: in 2007, the plaintiffs 150 Centreville, LLC, and DeMartino Building Company, Inc., whose principal is Frank DeMartino (DeMartino) served and filed a summons and complaint against Lin Associates Architects PC and Emily Lin (collectively referred to as Lin or the Lin defendants), alleging architectural malpractice and breach of contract.
A. The Complaint of October 23, 2007
According to the complaint, the contract between the parties was entered into during 2001 and the malpractice occurred at some point up to 2004, when the project agreed to was still incomplete. The complaint, dated October 23, 2007, over five years ago, alleged many design defects that resulted in both the rejection of the original plans to build a multi-building residential development and the loss of needed financing for the project. Significantly, the complaint sought an amount to be determined at trial, but no “less than $400,000.00, plus interest.”
B. The Preliminary Conference Order of April 22, 2009
Justice David Elliot signed a preliminary conference order on April 22, 2009. Deadlines for discovery were set, including examinations before trial to be held in August 2009. A compliance conference before this court was scheduled for September 8, 2009.
C. The Lin Defendants’ Discovery Demands of June 15, 2009
On or about June 15, 2009, the Lin defendants served a set of interrogatories accompanied by a notice for discovery and inspection of documents, including those referred to in the interrogatories. The interrogatories contained 23 relevant items of demanded information, often with subparts. The accompanying notice for discovery and inspection, also dated June 15, 2009, sought the documents, papers, and records that were to *516 be identified in the expected answers to the aforementioned interrogatories. This discovery notice listed 27 categories of pertinent documents to be produced. Plaintiffs failed to furnish any answers to the interrogatories or supply any documents to the aforementioned discovery demands. To date, plaintiffs still have not furnished any answers or documents in this litigation that is over five years old.
At no time did the plaintiffs move for a protective order. They never complained that the interrogatories were inappropriate, harassing, vexatious, blunderbuss, or prolix, or that the notice for discoveiy and inspection sought documents that were irrelevant.
This court’s review of the exhibits and the document demand, in fact, confirms the reasonableness of scope of the set of interrogatories and documents demanded. The questions sought go to the heart of the plaintiffs’ contentions regarding the alleged provisions of the contract, meetings with persons from the New York City Department of Buildings, the claims of architectural malpractice, and the alleged damages sustained by the plaintiffs.
D. The Court’s Compliance Conference Order of September 8, 2009
In a compliance conference order, dated September 8, 2009, this court required the plaintiffs to supply answers to the aforementioned interrogatories and document demand within 30 days. The court further required the plaintiffs to serve their note of issue and certificate of readiness by December 17, 2009. The plaintiffs violated said order, and failed to serve either answers to the defendants’ set of interrogatories or records in response to the defendants’ document demand.
E. This Court’s Short Form Order of December 14, 2009
By short form order dated December 14, 2009, the defense motion to dismiss the complaint for failure to comply with discovery was granted without opposition. The court’s order stated:
“It appears that plaintiffs have failed to comply with defendants’ discovery demands in accordance with the Preliminary Conference Order, dated April 22, 2009 and the Compliance Conference Order, dated September 8, 2009.
“Under the circumstances herein, plaintiffs’ complaint against the defendants is dismissed pursuant to CPLR § 3126. (See, Kihl v. Pfeffer, 94 NY2d 118 and 38 AD3d 238; Shapiro v. Kurtzman, 32 AD3d 508).”
*517 Three days before the above-quoted December 14, 2009 order was issued, DeMartino, the principal of the corporate plaintiffs, evidently concerned that the plaintiffs’ case might be dismissed, wrote to the court. He informed the court, inter alia, that he had discharged his counsel, Bryan Ha, Esq., and that he “was finally done interviewing attorneys [as successor counsel to Mr. Ha] and at the same time compiling the necessary discovery” (emphasis added).
Notwithstanding this letter, no one appeared on the plaintiffs’ behalf on the return date of the defendants’ motion to dismiss, December 14, 2009, so the court granted the motion without opposition. Significantly, despite DeMartino’s representation to the court that he was “at the same time compiling the necessary discovery,” made in his letter of December 11, 2009, he did not furnish answers to the defendants’ interrogatories or supply responsive papers to the defendants’ document demand. He still persists, to date, in this failure.
E This Court’s Short Form Order of March 18, 2011
Plaintiffs’ new counsel, Sean Wright, Esq. (Wright), on January 19, 2011, filed an order to show cause seeking to vacate the order of December 14, 2009. Although the plaintiffs’ motion, by order to show cause, was made more than a year after the action’s dismissal, this court, in a four-page order dated March 18, 2011, vacated the prior order dismissing the complaint, provided that certain conditions were met.
The court required that the set of interrogatories and document demand, both dated June 15, 2009, be answered no later than June 20, 2011, and that depositions follow thereafter. The order further stated:
“[Since] defendants ‘. . . endured delays and [were] forced to seek judicial intervention to secure disclosure to which it was entitled . . . ’, the record supports a finding that failure to respond to defendants’ discovery demands is equally attributable to both Mr. Ha, plaintiffs’ former counsel, and plaintiffs themselves. (See, Garan v. Don & Walt Sutton Builders, Inc., 27 AD3d 521, citing Smith v. New York Tel. Co., 235 AD2d 529). Mr. Ha bears responsibility by not informing the Court of the reasons for the delays and allowing successive orders to not be responded to. Whereas Mr. DeMartino knew as early as the summer of 2009 that he intended to change attorneys and failed to act on this until *518 December 2010. Accordingly, plaintiffs’ complaint is restored to pre-note status on the condition that Mr. Ha, plaintiffs’ former counsel, and plaintiffs each pay the sum of $500.00 (for a total of $1,000.00) to the defendants within 30 days after service of a copy of this order along with notice of entry. In the event Mr. Ha refuses or fails to pay, then plaintiffs shall pay an additional $500.00 to defendants on Mr. Ha’s behalf within 60 days. (See, Garan, supra; and Hyde Park Motor Company, Inc. v. Sucato, 24 AD3d 724).”
Despite this court’s exercise of discretion in vacating the prior order of dismissal, thereby resuscitating this old litigation, the plaintiffs did not furnish the answers to the defense set of interrogatories and supply the documents demanded in defendants’ notice of discovery and inspection, dated June 15, 2009, by the court-ordered June 20, 2011 deadline date. Plaintiffs still have not supplied answers or documents, and have persisted in flaunting court orders.
G. The Court’s So-Ordered Stipulation of October 6, 2011
The plaintiffs then complained, for the first time, that they could not supply any of the answers to any of the interrogatories because they lost their office or warehouse space, as a result of an illegal tenancy, where the documents allegedly were located. Without the documents, plaintiffs maintained that they could not supply answers to any of the interrogatories or furnish the demanded documents.
In light of the procedural history discussed above and the many opportunities afforded the plaintiffs, there was a sufficient basis to dismiss the complaint again, at this juncture.
Despite the vigorous opposition of the defendants who contended that the plaintiffs were frivolously stalling for time, the court exercised forbearance and did not dismiss the complaint. Instead, the court yielded to plaintiffs’ counsel’s pleas and gave his clients one more final opportunity to supply the discovery. Specifically, by so-ordered stipulation, dated October 6, 2011, following an extensive conference, the court provided for the service of a judicial subpoena by the plaintiffs on their former landlord to obtain the necessary corporate records and books of account. Furthermore, the last decretal paragraph of said so-ordered stipulation categorically stated:
“Plaintiffis] shall respond to defendant[s’] outstanding demands to defendant[s’] interrogatories and [notice for] discovery] and inspection], dated June *519 15, 2009, not later than December 6, 2011, pursuant to SFO [Short Form Order] decision dated March 18, 2011. In the event that plaintiff[s] fail[ ] to provide the aforementioned response[s] by December 6, 2011, plaintiffs’] complaint shall be automatically dismissed with prejudice.”
H. Justice Janice A, Taylor’s Three Court Orders during the Spring and Summer of 2011
Meanwhile, in 2011, as this court was involved in the numerous attempts to secure plaintiffs’ compliance with court-ordered discovery obligations dating back to the preliminary conference order of April 22, 2009, the energies of another Justice were occupied in the landlord-tenant problems and eviction of DeMartino and his corporate plaintiffs. Specifically, the plaintiffs’ landlord-tenant problems were adjudicated before Justice Janice A. Taylor of this court, who gave plaintiffs a few opportunities to retrieve the papers that plaintiffs alleged were in existence and that are responsive to the defendants’ discovery demands in the present action. (See decisions and orders of Justice Janice A. Taylor in SNC Props., LLC v DeMartino, Sup Ct, Queens County, Apr. 8, 2011, June 24, 2011, and Aug. 15, 2011, index No. 31518/10.)
In the order of June 24, 2011, Honorable Janice A. Taylor indicated that Frank DeMartino and his corporate entities who were named defendants in an action by SNC Properties, LLC (SNC), as landlord, were required to collect their papers and belongings pursuant to an eviction ordered by the Civil Court, Queens County, on or about October 4, 2010. According to Justice Taylor’s June 24, 2011 order, the defendants in the action by SNC, including Frank DeMartino, were given 10 days to remove their possessions from the premises at 138-01 Springfield Boulevard, Springfield Gardens, Queens County, New York. In the order of August 15, 2011, Justice Taylor pointedly observed: “It should be noted that defendants [Frank DeMartino and related corporate entities] were given more than one opportunity by this court to retrieve their property and failed to do so, indicating no effort at all.”
I. The So-Ordered Judicial Subpoena Duces Tecum Dated November 4, 2011
Pursuant to the so-ordered stipulation of October 6, 2011, Wright submitted to the court a judicial subpoena duces tecum that was “So Ordered” on November 4, 2011. Said subpoena ordered SNC, as the landlord, to provide “[a] 11 documents, *520 corporate records and books of account of 150 Centreville, LLC and DeMartino Building Company, Inc. that are presently in your custody or control.” Plaintiffs allegedly tried throughout November 2011 to serve SNC. Ms. Connie Lomonaco, a managing member of SNC, states, in her affidavit, sworn to on December 20, 2011, that, pursuant to court order, on August 17, 2011, Royal Waste Services, Inc. (Royal)
“removed all of the paperwork and all of the other defendants’ [sic] possessions which had been in our premises. The materials were put in their waste container, and Royal Waste Services took it away. Presumably, they disposed of it. There are no remaining papers which may have been once in the office space occupied by the defendants in the action SNC Properties, LLC v DeMartino et al., [index No.] 31518/2010. I do not know the contents of the papers which were disposed of; I simply know that nothing remains.”
A receipt from Royal, confirming the removal of the papers, was attached to Lomonaco’s affidavit.
J. The Court’s So-Ordered Stipulation of December 21, 2011
It became obvious to this court that plaintiffs could not stall any longer and that their inability to obtain the necessary documents precluded them from complying with the outstanding discovery orders. Under these circumstances, and after another extensive conference with counsel, a stipulation was signed by this court dated December 21, 2011, setting forth a schedule for Wright to move, by order to show cause, to be relieved as counsel for the plaintiffs and also providing for a judgment of dismissal of this case to be signed, as provided in the October 6, 2011 order, after said counsel would be relieved. It was made clear to Wright that, although sanctions for frivolous litigation were already warranted at this juncture, he would be relieved without facing any sanctions.
K. The Proceedings from 2012 to Date
Wright elected not to move to be relieved as counsel, and, instead, the plaintiffs filed a note of issue, dated January 5, 2012. By letter dated January 17, 2012, defense counsel Lori Samet Schwarz, Esq., wrote to the court, protesting the filing of a note of issue by the plaintiffs that falsely indicated that all of discovery was complete. She further maintained that the plaintiffs’ “failure to comply with the Court’s October 6, 2011 Order requiring service of discovery responses by December 6, 2011, had resulted in the automatic dismissal of the case.”
*521 Although this court strongly admonished plaintiffs’ counsel that further unnecessary motion practice would result in sanctions, the court signed a so-ordered stipulation dated February 9, 2012, that provided for the entry of a judgment of dismissal, but also limited the time for a motion to vacate the dismissal to be made, if so advised. The plaintiffs’ counsel was warned that such a motion to vacate would invite a cross motion by defense counsel seeking severe sanctions.
The County Clerk entered a “JUDGMENT OF DISMISSAL” on July 5, 2012, dismissing the action with prejudice.
In the present motion practice, Wright moves, on plaintiffs’ behalf, to vacate the judgment of dismissal. Even without the documents, the plaintiffs plead for an opportunity to have their action proceed to trial. Lin’s defense counsel slams Wright’s efforts as a transparent and meaningless litigation tactic designed solely to create an illusion of good faith, but is nothing more than a contemptuous “charade.” Defense counsel seeks the imposition of both actual litigation costs and sanctions against both plaintiffs and Wright. By their cross motion, the Lin defendants seek $38,016.84 as reasonable attorney’s fees, for the moneys allegedly expended by Lin in litigating frivolous motions from 2011 to date, where the plaintiffs were aware that they could not provide meaningful discovery, but still refused to have their complaint dismissed.
As a result of plaintiffs’ and DeMartino’s obdurate refusal either to supply the demanded discovery or to discontinue the action, from 2011 to date, this court has been consumed with this litigation. The court, in numerous conferences with both counsel and DeMartino present, urged that the action could not be maintained without essential discovery since the defendants were powerless to defend themselves in a vacuum. The court requested the plaintiffs to discontinue the action. DeMartino refused, obdurately forcing his counsel to continue the litigation without providing some alternative remedy of defendants getting their discovery. Thus, to date, the plaintiffs have not supplied answers to interrogatories, have not supplied any papers, records, documents, or books of account, and have not submitted to EBTs. In sum, the plaintiffs have not furnished the defendants with one iota of discovery whatsoever.
II. The Law
A. A Pattern of Willful Default and Neglect
The court, in the case at bar, as noted above, has conducted extensive discovery conferences and supervised motion practice *522 from 2009 to date, wherein the plaintiffs have tried to avert the complaint’s dismissal, without complying with court-ordered discovery obligations, and the defendants are left to defend the complaint’s allegations in a vacuum. (See e.g. 915 Broadway Assoc. LLC v Paul, Hastings, Janofsky & Walker, LLP, 34 Misc 3d 1229[A], 2012 NY Slip Op 50285[U] [2012].)
The Appellate Division, Second Department, has repeatedly stated that it will not tolerate a pattern of willful default and neglect in court-ordered discovery obligations. (See Bazoyah v Herschitz, 79 AD3d 1081, 1081-1082 [2010]; Brownfield v Ferris, 49 AD3d 790, 791 [2008]; Diamond v Vitucci, 36 AD3d 650 [2007]; Rodriguez v New York Methodist Hosp., 3 AD3d 526 [2004]; Clarke v United Parcel Serv., 300 AD2d 614, 615 [2002]; Piacentini v Mineola Union Free School Dist., 267 AD2d 290 [1999]; Wynne v Wagner, 262 AD2d 556, 556 [1999], lv dismissed 94 NY2d 796 [1999]; Williams v New Style Limousine, 1 Misc 3d 502, 506 [2003]; Fujah v V-M Auto Refinishing Corp., 192 Misc 2d 170, 175 [2002]; accord Williams v Shiva Ambulette Serv. Inc., 102 AD3d 598 [2013].)
Five separate orders have been issued concerning plaintiffs’ failure to engage in discovery: the preliminary conference order of April 22, 2009, the compliance conference order of September 8, 2009 that specifically referenced the defendants’ set of interrogatories and demand for documents dated June 15, 2009, the short form order of December 14, 2009, the short form order of March 18, 2011, and, finally, the so-ordered stipulation of October 6, 2011.
Justice Taylor, in addition, as stated above, issued three decisions and orders in SNC Props., LLC v DeMartino (Sup Ct, Queens County, Apr. 8, 2011, June 24, 2011, and Aug. 15, 2011, index No. 31518/10), to afford DeMartino and his corporate entities the opportunity to get their papers, records, documents, and belongings from their former office space.
In response, DeMartino does not supply any answers to any interrogatories and does not furnish the documents. Thus, from June 15, 2009, the date of their discovery demands, defendants have not received answers or documents. Multiple and simultaneous efforts by two Justices of this court have not influenced the plaintiffs. This court, in repeated conferences attended by DeMartino personally, urged a consensual dismissal of the complaint because of the failure of discovery and inability to provide the demanded disclosure. DeMartino remains steadfast in his obduracy. He persists that, despite the fact that neither *523 he nor the corporate plaintiffs can supply answers to basic interrogatories and furnish the documents, this action be permitted to remain alive and go to trial. Even when warned by the court of the provisions of 22 NYCRR part 130, permitting the imposition of sanctions and/or the award of reasonable attorney’s fees, the plaintiffs and DeMartino remain unfazed.
B. The Failure to Respect Court-Ordered Discovery Obligations
The order of this court dated December 14, 2009, dismissing the complaint without opposition, cited the New York Court of Appeals’ decision in Kihl v Pfeffer (94 NY2d 118 [1999]), where the Court unanimously affirmed the trial court’s dismissal of a complaint for a plaintiff’s failure to respond to a set of interrogatories. There, in Kihl, Chief Judge Kaye, writing for the Court, stated:
“Regrettably, it is not only the law but also the scenario that is all too familiar. If the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity. Indeed, the Legislature, recognizing the need for courts to be able to command compliance with their disclosure directives, has specifically provided that a ‘court may make such orders ... as are just,’ including dismissal of an action (CPLR 3126). Finally, we underscore that compliance with a disclosure order requires both a timely response and one that evinces a good-faith effort to address the requests meaningfully.” (94 NY2d at 122-123 [citations omitted].)
Despite the admonition of the Court of Appeals in Kihl, in 1999, the Court, even a decade later, was still warning the bar and litigants with the message that discovery orders needed to be obeyed. Specifically, in Gibbs v St. Barnabas Hosp. (16 NY3d 74 [2010]), the Court of Appeals asserted that “there is also a compelling need for courts to require compliance with enforcement orders if the authority of the courts is to be respected by the bar, litigants and the public.” (Gibbs, 16 NY3d at 81.) The Court, in language certainly applicable to the facts of the case at bar, maintained: “Chronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules and a culture in which cases can linger for years without resolution.” (Id.)
That message still has not penetrated, requiring appellate courts to repeat it. Most recently, Justice Leonard B. Austin, *524 writing for a unanimous panel of the Appellate Division, Second Department, in Arpino v F.J.F. & Sons Elec. Co., Inc. (102 AD3d 201 [2012]), articulated the applicable law:
“As the Court of Appeals has noted, the failure of attorneys to comply with court-ordered deadlines has increasingly become a problem in our court system. Compliance requires not only a timely response, but a good-faith effort to provide a meaningful response. The failure to comply with deadlines and provide good-faith responses to discovery demands ‘impairs the efficient functioning of the courts and the adjudication of claims’ (see Gibbs v St. Barnabas Hosp., 16 NY3d at 81; Kihl v Pfeffer, 94 NY2d at 123). The Court of Appeals has also pointed out that ‘[c]hronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules’ (Gibbs v St. Barnabas Hosp., 16 NY3d at 81), and has declared that ‘[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity’ (Kihl v Pfeffer, 94 NY2d at 123; see generally Cadichon v Facelle, 18 NY3d 230 [2011]).
“Although perhaps an undesirable outcome, parties, where necessary, will be held responsible for the failure of their lawyers to meet court-ordered deadlines and provide meaningful responses to discovery demands and preliminary conference orders. The failure to abide by these basic rules governing compliance with disclosure orders cannot and will not be tolerated in our courts.” (Arpino, 102 AD3d at 207-208 [citations omitted].)
C. The Responsibility to Preserve Evidence and Papers
A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. (See e.g. VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33 [2012] [appellate court found that the destruction of emails for a four-month period, when a “litigation hold” should have been placed on electronically stored information, was, at a minimum, “grossly negligent”], affg 2010 NY Slip Op 33759[U] [2010]; S.B. v U.B., 38 Misc 3d 487, 495 [2012] [“(A) party is responsible for preserving evidence when they are on notice that it may be needed for litiga *525 tion. This responsibility to preserve evidence may extend to items that are not in the possession of a party when that party negligently fails to take steps to assure their preservation” (citation omitted)].)
This court notes that the case at bar is not a spoliation case. No one in the instant matter contends that there was a spoliation or despoiling of papers or records. Rather, the issue here is a party’s gross negligence in not preserving essential records, papers, and documents, and repeated violations of court orders mandating discovery, accompanied by dilatory, wasteful motion practice. While this action is not a spoliation of evidence case per se, reference and citation to spoliation cases are, nevertheless, helpful, since courts have talked of a party placing a “litigation hold” on papers, records, documents, emails, and videotaped evidence the moment that litigation either has commenced or is contemplated. (See VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33 [2012], supra; Klein v Seenauth, 180 Misc 2d 213, 220 [1999]; accord United States v Yevakpor, 419 F Supp 2d 242, 247, 251 [2006].)
DeMartino, as discussed above, concerned with the possible dismissal of his action, wrote a letter to the undersigned, dated December 11, 2009, stating that he was “compiling the necessary discovery.” That representation turned out to be false.
Regarding the discovery debacle in the present action, the plaintiffs, and especially their principal, DeMartino, are quick to point the finger of blame. Among their perceived objects for blame are their prior landlord, the waste carting disposal company, prior counsel, Justice Taylor, and this court. Concerning the now allegedly lost documents and continued alleged inability to answer interrogatories, the plaintiffs do not explain why they did not safeguard, protect, and move the documents before their landlord-tenant problems began. Before commencing an action in 2007, demanding “no less than $400,000.00” in compensatory damages for negligent actions or omissions that occurred from 2001 through 2004, the plaintiffs and especially DeMartino himself should have secured their papers in a safe place and should certainly have done so at the first hint of an alleged problem with their former landlord. Most plaintiffs, in addition, in garden variety civil litigation, at the start of a lawsuit — and even before an action is filed — usually make a copy of all pertinent documents for their counsel. Plaintiffs do not explain why they did not make copies of their papers when they commenced the action and did not give a duplicate set of *526 pertinent records, papers, documents, and books of account to their counsel.
From 2009 to date, DeMartino repeatedly claims that the “Plaintiffs made every effort to timely comply with the Court’s orders regarding discovery” and were stymied only by SNC, the legal owner of their former office premises, from securing the records left there. (Aff of Frank DeMartino, sworn to on Aug. 6, 2012.) DeMartino has repeatedly made the same excuse for not answering interrogatories and a document demand that was served by defendants on June 15, 2009. In Lewis Carroll’s (1832-1898) famous nonsense poem The Hunting of the Snark (1874), the character of the Bellman had a “rule-of-three”: “What I tell you three times is true.” The Bellman, like DeMartino here, believed, in other words, that if he said something often enough it would be true. DeMartino’s excuses and finger-pointing will not suffice, where he was responsible for not protecting and safeguarding essential documents from 2001 to date.
The energies and resources of this court and those of Justice Taylor were ignored by the plaintiffs to this action and DeMartino. Unfortunately, if DeMartino had compiled his discovery on December 11, 2009, when he sent a letter to the court indicating that “[t]he possible dismissal of the case is completely irrational,” recognizing that his then attorney was calling him “frantically indicating that the Court is going to dismiss the case,” and that he was “at the same time compiling the necessary discovery,” DeMartino and the plaintiffs would not be in their current predicament. For DeMartino to try to paint himself as the victim is a pointless, futile exercise. DeMartino is not a victim. True, DeMartino experienced contentious relations and ultimately litigation with the owner of the premises of his office, SNC. That was all the more reason for him to take steps to collect the essential documents of the corporate plaintiffs that were needed to prosecute the present litigation and put them in the hands of his counsel. DeMartino failed to do that elementary task and was grossly negligent for over a decade in compiling and protecting the essential and necessary documentation.
This court is able to distinguish whose gross negligence, at best, caused the result. As Supreme Court Justice Oliver Wendell Holmes, Jr., stated, in his treatise The Common Law: “even a dog distinguishes between being stumbled over and being kicked.” (Holmes, The Common Law at 3 [1881].)
DeMartino, rather than pointing his finger of blame at others, needs to realize and understand that the predicament of *527 the corporate plaintiffs was caused by their own sloppiness and laziness and could have been averted by them. Before blaming others, DeMartino and the plaintiffs need to be introspective and to take responsibility. American football coach Don Shula stated: “The superior man blames himself. The inferior man blames others.” As put by Louis Nizer, late twentieth century veteran trial lawyer and prolific author: “When a man points a finger at someone else, he should remember that four of his fingers are pointing to himself.” (L. Nizer, My Life in Court at 115 [Doubleday 1961].)
D. Vacatur of the Judgment of Dismissal is Unwarranted
The so-ordered stipulation of October 6, 2011, was clear: in the event that the defendants did not receive the answers to their set of interrogatories and demanded documents by December 6, 2011, the complaint and the action would be dismissed with prejudice. The so-ordered stipulation of October 6, 2011, quoted above in part I (G) of this opinion, was a conditional order of dismissal that automatically became absolute when the plaintiffs failed to serve the answers and the documents. (See Archer Capital Fund, L.P. v GEL, LLC, 95 AD3d 800, 801 [2012], lv dismissed 19 NY3d 1004 [2012]; Kirkland v Fayne, 78 AD3d 660, 660-661 [2010]; Goldsmith Motors Corp. v Chemical Bank, 300 AD2d 440 [2002]; see also Williams v New Style Limousine, 1 Misc 3d at 507 [citing cases]; Fujah v V-M Auto Refinishing Corp., 192 Misc 2d at 174 [citing cases].)
The plaintiffs, in order to be relieved of their default, under case law of the Appellate Division, Second Department, needed to demonstrate a reasonable excuse. (See CPLR 5015 [a]; Deutsche Bank Natl. Trust Co. v Gutierrez, 102 AD3d 825 [2013]; Stevens v Charles, 102 AD3d 763 [2013]; Tuthill Fin., L.P. v Ujueta, 102 AD3d 765 [2013]; Matter of Martique S.C. [Sharika C.], 101 AD3d 1116 [2012]; Onewest Bank, FSB v Martinez, 101 AD3d 969 [2012]; Wells Fargo Bank, N.A. v Russell, 101 AD3d 860 [2012].)
As the Appellate Division, Second Department, recently emphasized, the determination of what constitutes a reasonable excuse lies within the sound discretion of the Supreme Court. (See Deutsche Bank Natl. Trust Co. v Gutierrez, 102 AD3d 825 [2013], supra; Tuthill Fin., L.P. v Ujueta, 102 AD3d 765 [2013], supra.) The plaintiffs here, fatal to their motion to vacate the judgment of dismissal, have failed to show a reasonable excuse.
It is to be emphasized that this is the second motion by plaintiffs to vacate a dismissal of the action. No discovery has *528 been exchanged since March 18, 2011, the date of this court’s order vacating the original order of dismissal dated December 14, 2009.
See this court’s discussion in part II (A) of this opinion, above, concerning the plaintiffs’ pattern of willful default and neglect. The plaintiffs’ continuing failure, in particular, to offer an answer to any of the defendants’ interrogatories dated June 15, 2009 speaks volumes.
The plaintiffs, instead of trying to provide any disclosure, apparently pin their hopes on the possibility that Justice Taylor’s decisions might be reversed on appeal and that the issuance of subpoenas would somehow make the documents that were carelessly not preserved suddenly, talismanically, magically, and miraculously reappear. Under the circumstances of the present case, any result other than dismissal of the complaint and the action would still be prejudicial to the Lin defendants, is an affront to justice, and would subvert the repeated calls of both the Court of Appeals and the Appellate Division for obedience to discovery orders.
Three and one half years after the service of relevant discovery demands, on June 15, 2009, and more than three years after DeMartino’s letter to this court, dated December 11, 2009, pleading against dismissal of the action on his false assurance that he was compiling the discovery requested by the defendants, this court is still involved in litigating this long dead and moribund issue. The time has come for this action to be put to rest, finally.
The vacatur of the judgment of dismissal of the action is hence unwarranted. The court thus denies the plaintiffs’ motion to vacate the judgment of dismissal.
E. The Imposition of Attorney’s Fees and Monetary Sanctions
In a well-prepared cross motion, Lori Samet Schwarz, Esq., of defense counsel, argues that she should be awarded significant attorney’s fees to be imposed upon the plaintiffs and their counsel, Mr. Wright, for vexatiously prolonging this lawsuit, considering the history and circumstances of this action, described above. On December 14, 2009, this court already issued an order dismissing the action for failure to respond to the defendants’ interrogatories and document demand. The court, however, vacated that prior order, in an order of March 18, 2011 that directed plaintiffs themselves and their former counsel each to pay $500 to the defendants and to supply finally the *529 long demanded discovery. Plaintiffs and DeMartino, however, produced no answers and no records. As a result, only from September 7, 2011 to date, according to defense counsel’s billing records, attached as an exhibit, defense counsel has expended nearly $40,000 in attorney’s fees simply in an effort to secure discovery responses or have this lawsuit once and for all terminated. Needlessly, the plaintiffs prolonged the lawsuit to the detriment of defendants and defense counsel in time, money, energy, and effort.
In England, a successful defendant need not worry about attorney’s fees and costs since the loser in a litigation must compensate the winner. In American courts, however, each side typically pays for its own counsel fees, with certain exceptions to the contrary, where attorney’s fees may be recovered pursuant to contractual provisions, statutes, and court rules. (See Engel v CBS, Inc., 93 NY2d 195, 201 [1999]; Great Neck Terrace Owners Corp. v McCabe, 101 AD3d 944 [2012].) “Established New York common law requires that all parties to a controversy, the victors and the vanquished, pay their own counsel fees.” (Matter of Urbach, 252 AD2d 318, 321 [1999].) As a result, in the United States, there is little disincentive from commencing and/or maintaining a litigation that is harassing, vexatious, and frivolous. (Engel v CBS, Inc., 93 NY2d at 201.)
Under New York State practice, a court may impose sanctions only where expressly permitted by statute (see CPLR 3126 [authorizing a court to make such orders “as are just” with regard to the failure to obey a discovery order or the willful failure to disclose relevant information]; 8303-a [permitting the imposition of monetary sanctions in certain enumerated tort actions, the statute was enacted as part of a legislative package intended to reduce frivolous claims and alleviate an insurance liability crisis in personal injury actions]) or court rule (see e.g. 22 NYCRR 130-1.1 [authorizing imposition of costs and attorney’s fees for engaging in “frivolous conduct”]).
In Matter of Gordon v Marrone (202 AD2d 104 [1994], lv denied 84 NY2d 813 [1995]), writing for the unanimous panel, Justice David S. Ritter chronicled the history and development of the sanctions rule, now found in part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR). Observing that New York State appellate courts, during the 1980s, lamented the proliferation of frivolous and vexatious lawsuits, judicial authorities in the state, even in the absence of legislative action, took charge. Justice Ritter observed: “Frivolous claims and *530 abusive litigation practices were causing unjustifiable burdens on an already overcrowded court system. Inordinate delays in the resolution of genuine disputes and increases in the expense of lawsuits for both litigants and the courts were the result. The need for sanction power had become obvious.” (Gordon, 202 AD2d at 108.)
In 1986, the Court of Appeals, in Matter of A.G. Ship Maintenance Corp. v Lezak (69 NY2d 1, 5-6 [1986]), recognized that, although the New York State Legislature has not addressed the issue, frivolous litigation is so serious a problem affecting the proper administration of justice that the courts, even in the absence of legislation, may proscribe such conduct and impose sanctions in the exercise of their rule-making powers. Finally, the Chief Administrator of the Courts promulgated rules governing the imposition of costs and sanctions for frivolous conduct in civil cases effective January 1, 1989 (see 22 NYCRR subpart 130-1).
Conduct is frivolous under 22 NYCRR 130-1.1 if it is “completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law” (22 NYCRR 130-1.1 [c] [1]) or it is “undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another” (22 NYCRR 130-1.1 [c] [2]), or “it asserts material factual statements that are false” (22 NYCRR 130-1.1 [c] [3]). Significantly, in the present case, Wright, the plaintiffs, and DeMartino have managed to run afoul of 22 NYCRR 130-1.1 (c) (2) and (3). They repeat the same tired story of a landlord’s destruction of records, as though the plaintiffs and DeMartino were innocent naifs in the story, as extensively recounted above, and have unreasonably prolonged this moribund litigation that began in 2007, concerning events that occurred in 2001 to 2004 (22 NYCRR 130-1.1 [c] [2]). Compounding the problem, their account is distorted, conveniently failing to assert all the facts and all the orders and multiple opportunities provided by this court for the plaintiffs to furnish the disclosure demanded of them and to avoid the imposition of both sanctions and an award of reasonable attorney’s fees. Wright and the plaintiffs conveniently omit DeMartino’s false representation to this court, made in his letter of December 11, 2009, that he was “compiling the necessary discovery.” (22 NYCRR 130-1.1 [c] [3].)
“Making colorable claims may constitute frivolous conduct if the primary purpose is to delay or prolong the resolution of the *531 litigation, or to harass or maliciously injure the other party.” (Kaygreen Realty Co., LLC v IG Second Generation Partners, L.P., 78 AD3d 1008, 1009 [2010]; see e.g. Sassower v Signorelli, 99 AD2d 358, 359 [1984].) “Enforcement of the sanctions rule is essential to deter conduct that wastes judicial resources and inhibits the proper administration of the court system.” (Gordon v Marrone, 202 AD2d at 111.) Also, see discussion in Klein v Seenauth (180 Misc 2d at 220-221). The plaintiffs’ and DeMartino’s misconduct here produced a colossal waste of time and expense, draining the energies of defendants, defense counsel, and the court.
This court notes that, under the portion of 22 NYCRR subpart 130-1 — better known to the New York bar as “Part 130” — a court can award attorney’s fees in favor of a party and/or sanctions as against either a party or its counsel or both. Section 130-1.1 (a) specifically allows for “actual expenses reasonably incurred and reasonable attorney’s fees, resulting from frivolous conduct as defined in this Part.”
If the court imposes pure “sanctions” — as opposed to an award of reasonable attorney’s fees and actual expenses — where such a sanction is levied against an attorney or a law firm, it is to be paid to the “Lawyers’ Fund for Client Protection.” (22 NYCRR 130-1.3; see e.g. Matter of Rocchio v Centrum Constr. Co., 221 AD2d 447, 448 [1995].) If such a sanction is levied against a party who is not an attorney, the sum gets deposited with the Clerk of the Court for transmittal to the New York State Commissioner of Taxation and Finance. (22 NYCRR 130-1.3.)
Some professional practice commentators, indeed, urge practicing lawyers to contest sanctions, as follows: “Bear in mind that judges, rightly or wrongly, are reluctant to impose sanctions. If you give them an out, they will more often than not take it.” (2 Ira Leesfield & Mark Sylvester, Litigating Tort Cases § 20:5.) This court, however, cannot be cavalier and disregard the remedies imposed by and available under part 130, especially since this court conducts the Compliance Conference Part of the court, and, every working day, is charged with supervising, directing, and enforcing discovery for all individual assignment parts of the court.
Defendants urge the imposition of significant monetary sanctions, in the form of an award of attorney’s fees, against the plaintiffs and their counsel, claiming, inter alia, that they “orchestrated the charade of obtaining a court-ordered subpoena *532 for production [of documents], knowing full well that the records no longer existed.” (Affirmation of Lori Samet Schwarz, Esq., dated Oct. 5, 2012, para 9 at 4 in support of cross motion.)
As to Wright, the court finds that it gave him an opportunity to be relieved as counsel without incurring sanctions personally. The court explained the consequences to him if he chose not to do so. Wright’s decision to not make the motion to be relieved may have been the product of pressure by his clients, but he owed, first and foremost, a duty to the court and its orders before yielding to unreasonable client demands. (See Steinle v Warren, 765 F2d 95, 101 [7th Cir 1985] [“(Counsel) ignores the fact that he also is an officer of the court and that his duty to the court is paramount, even to the interests of his client”; imposing attorney’s fees on counsel]; Van Berkel v Fox Farm & Rd. Mach., 581 F Supp 1248, 1251 [D Minn 1984] [“Attorneys are officers of the court and their first duty is to the administration of justice. Whenever an attorney’s duties to his client conflict with those he owes to the public as an officer of the court, he must give precedence to his duty to the public. Any other view would run counter to a principled system of justice”; imposing attorney’s fees upon counsel].) As Chief Judge Benjamin N. Cardozo stated: “Membership in the bar is a privilege burdened with conditions.” (Matter of Rouss, 221 NY 81, 84 [1917], cert denied 246 US 661 [1918].) The court cannot ignore the fact that Wright participated with his clients and DeMartino in a knowing design to tax the adversary parties and counsel with needless litigation. (See e.g. Ferran v Williams, 281 AD2d 819, 821 [2001], lv dismissed 97 NY2d 653 [2001]; William P. Pahl Equip. Corp. v Kassis, 182 AD2d 22, 32-33 [1992], lv denied and dismissed 80 NY2d 1005 [1992]; Madden v Town of Greene, 38 Misc 3d 1210[A], 2013 NY Slip Op 50046[U] [2013].) Wright’s service of the judicial subpoenas officially yielded the information already known: Connie Lomonaco’s affidavit, sworn to on December 20, 2011, made clear that Royal disposed of DeMartino’s property on August 17, 2011 — long after DeMartino was provided with opportunities by Justice Taylor to get, preserve, and secure corporate records and books of account. Thus, this court has ample reason to impose sanctions, in the form of reasonable attorney’s fees, against Wright. (See 22 NYCRR 130-1.1 [c] [2].)
As to the plaintiffs and DeMartino, procrastination seems to flow through their lifeblood. For a contract that allegedly was entered into in 2001, the plaintiffs waited until 2007 before fil *533 ing suit. Then, in 2009, when this case was on the brink of dismissal, DeMartino wrote to this court, falsely indicating that he had been compiling the essential discovery needed to answer the interrogatories and supply the missing documents. This court believes, furthermore, that the length of the litigation in the case at bar is inexcusable. The case should have terminated earlier with the inability of the plaintiffs and DeMartino to supply answers to the defendants’ interrogatories and their demand for relevant documents. The litigation was not ended, despite this court’s repeated involvement in conferences and motions, only because of the obdurate intractability of DeMartino, the plaintiffs’ principal, who has insisted on persistent dilatory tactics. Under the circumstances, the prior vacatur of the case’s dismissal proved to be futile, and needlessly resuscitated an action that should have been permanently laid to rest, pursuant to this court’s original order, dated December 14, 2009. Accordingly, the imposition of reasonable attorney’s fees, as a sanction, against the plaintiffs, is warranted under 22 NYCRR 130-1.1 (c) (2) and (3).
There is no question that the work that was expended by defense counsel was time-consuming. If the court awards actual expenses and reasonable attorney’s fees, no restriction as to monetary amount exists as long as the attorney’s fees were “reasonable” under the particular set of circumstances. (See e.g. 47 Thames Realty, LLC v Robinson, 85 AD3d 851, 852 [2011] [affirming award of over $20,000 of reasonable attorney’s fees and costs].) Usually, a hearing will be required to determine the “reasonableness” of the sums expended in counsel fees. (See e.g. Kaygreen Realty Co., LLC v IG Second Generation Partners, L.P., 78 AD3d 1008, 1009 [2010], supra; Yenom Corp. v 155 Wooster St. Inc., 33 AD3d 67 [2006]; Paull v First UNUM Life Ins. Co., 288 AD2d 842, 843 [2001] [Supreme Court erred in awarding plaintiffs $30,000 in attorney’s fees without conducting a hearing].)
In arriving at a figure for reasonable attorney’s fees to be asserted against Wright and the plaintiffs herein, the court will conduct a hearing. Although Mr. Wright’s argument for a hearing is styled generally, without contesting the specifics of what might be unreasonable in the defense-offered time records and hourly fees, the court refuses to engage in a Solomonic exercise of “splitting the baby” (see 1 Kings 3:16-28). The amount of any award for reasonable attorney’s fees cannot be plucked out of a hat or from thin air. It must be established by competent *534 evidence. (See e.g. Peabody Coal Co. v McCandless, 255 F3d 465, 470 [7th Cir 2001] [a decision that found that an attorney’s hourly rate of $200 per hour was reasonable, without citing supporting reasons, required vacatur of the award; “It is a number plucked from a hat”]; Dynasteel Corp. v Aztec Indus., Inc., 611 So 2d 977, 986 [Miss 1992] [“No evidence substantiating the reasonableness of this figure was presented into the record. DynaSteel is correct in that, as a general matter, the amount (of) an attorneys’ fees award should be supported by credible evidence and should not be plucked out of the air”].)
The New York Court of Appeals, in Matter of Freeman (34 NY2d 1, 9 [1974]), stated, concerning the assessment and reasonableness of a fee award:
“Long tradition and just about a universal one in American practice is for the fixation of lawyers’ fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer’s experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.”
The Appellate Division, Second Department, in Kaygreen Realty Co., LLC v IG Second Generation Partners, L.P. (78 AD3d 1008 [2010], supra), dealt with the lower court’s imposition of an award of reasonable attorney’s fees in the amount of $139,857.75, pursuant to a violation of 22 NYCRR part 130, based on a finding of frivolous conduct. Remitting the matter to the lower court for a new hearing on the amount of the attorney’s fee, the Second Department stated that “there was no evidence as to the ‘customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented.’ ” (Id. at 1010 [citation omitted].) Similarly, in Paull v First UNUM Life Ins. Co. (288 AD2d 842 [2001], supra), the appellate court found that the Supreme Court erred in awarding plaintiffs $30,000 in attorneys’ fees as a sanctions award without conducting a hearing. The Appellate Division, Fourth Department, stated that a hearing afforded the defendant an opportunity to contest the amount to be awarded and “to ensure that the fees are ‘fixed upon a proper showing of the value of work necessitated and amount of time actually *535 expended’ by plaintiffs in litigating the relevant discovery motions.” (288 AD2d at 842 [citation omitted].) As the Appellate Division, First Department, stated in Yenom Corp. v 155 Wooster St. Inc. (33 AD3d 67 [2006], supra), with equal application to the present case: “Although defendants’ attorneys have attached their legal bills in order to establish the appropriate amounts, we deem it prudent to afford plaintiff and its counsel an opportunity to challenge the significant amounts requested at an adversary hearing.” (Id. at 75.) For other pertinent cases containing a good discussion of the award of reasonable attorney’s fees in the context of a sanction award made pursuant to 22 NYCRR part 130, see Timoney v Newmark & Co. Real Estate (299 AD2d 201 [2002], lv dismissed 99 NY2d 610 [2003]); Skolnick v Goldberg (297 AD2d 18 [2002] [per curiam]); and Matter of Rose BB. (262 AD2d 805 [1999], lv dismissed 93 NY2d 1039 [2002]).
This court, accordingly, at a hearing, will consider testimony and other proof of the reasonableness of attorney’s fees incurred by defendants from 2011 to date, as a result of the misconduct of Wright and the plaintiffs, as set forth above. The defendants’ cross motion is, therefore, granted to the extent that the court will conduct a hearing on the reasonableness of the attorney’s fees to be awarded against Wright and the corporate plaintiffs and in favor of defense counsel. The hearing will be held on March 8, 2013, in Courtroom 313, at the Courthouse, 88-11 Sutphin Boulevard, Jamaica, Queens County, New York, at 10:00 a.m.
In sum, the plaintiffs’ motion to vacate the judgment of dismissal is denied in its entirety, and the defendants’ cross motion is granted to the extent indicated above.
The court concludes with the following observation and recommendation. An interesting legal issue, although not raised by the defendants, is whether the court can impose an award of attorney’s or counsel fees against a nonparty that causes, provokes, and/or directs frivolous litigation. This legal issue points to a glaring deficiency of part 130. In Matter of Guarraci (100 AD3d 633, 634 [2012]), the Second Department, affirming the lower court, approved of the maximum sanction amount of $10,000 being levied against a nonparty who was an attorney — a sum that, as stated above, gets paid by the offending lawyer or law firm to the “Lawyers’ Fund for Client Protection.” (22 NYCRR 130-1.3; see e.g. Matter of Rocchio v Centrum Constr. Co., 221 AD2d at 448; accord Capetola v Capetola, 96 AD3d 612, 613 [2012].)
*536 Yet, while a court, under part 130, may levy sanctions against a nonparty attorney, the Appellate Division, Second Department, in State Farm Fire & Cas. v Parking Sys. Valet Serv. (85 AD3d 761, 764-765 [2011]), held that an award of reasonable attorney’s fees for the conduct of frivolous, vexatious, or malicious litigation under part 130 may not be issued against a nonparty who is not an attorney. The Second Department stated: “Statutes authorizing an award of costs and sanctions are in derogation of common law and, therefore must be strictly construed.” (Id. at 764-765.) If applicable, a nonparty may be pursued for remedies for civil contempt (see Judiciary Law § 773; see also CPLR 5210 [empowering the Supreme Court to punish a contempt of court in connection with a proceeding to enforce a money judgment]; 5251 [the Supreme Court may hold “any person” in contempt for, among other things, “false swearing upon an examination” relating to the enforcement of a money judgment]), and only where proper notice was given pursuant to Judiciary Law § 756. (State Farm Fire & Cas. v Parking Sys. Valet Serv., 85 AD3d at 764-765.) Civil contempt is inapplicable to DeMartino under the facts of the present case.
This court would like to hold that not only the corporate plaintiffs, but that its nonparty principal, DeMartino, should be personally responsible for the payment of all counsel fees to be awarded by the court following a hearing. Since part 130, however, must be strictly construed and cannot be interpreted so as to allow an award of attorney’s fees against a nonparty such as DeMartino in the present action, the court-created rule has a gaping loophole. DeMartino is the guiding principal and manager of the two corporate plaintiffs. Yet, he may not be touched by the court in assessing reasonable attorney’s fees. As discussed below, the New York Legislature should deal with this and other deficiencies in 22 NYCRR part 130, as currently formulated.
New York’s legislature, if it seriously would like to put teeth and muscle to the repeated calls by our appellate courts against frivolous, vexatious, and malicious litigation, could profitably look to the State of Georgia as an example. The legislature of the State of Georgia enacted a law, stating:
“The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused *537 the plaintiff unnecessary trouble and expense, the jury may allow them.” (Ga Code Ann § 13-6-11 [“Expenses of litigation”]; see e.g. Kroger Co. v Walters, 735 SE2d 99, 106 [Ga Ct App 2012].)
This court suggests that the New York Legislature adopt a similar law to the Georgia statute, but that goes even further by empowering a court to award counsel fees and impose sanctions against a nonparty principal of a firm, partnership, or enterprise. The legislature in New York should enact a law that discourages any party and a nonparty principal (whether he be an attorney or not), not only an obdurate and calculating defendant, from engaging in “bad faith” tactics that cause an adversary “unnecessary trouble and expense,” at the pain of a jury decision determining attorney’s fees. With the enactment of a powerful and potent law governing the award of attorney’s fees, even against a nonparty principal of an entity, our appellate courts can be spared from the effort of reminding litigants and their counsel every few years of their disclosure obligations and the importance of heeding and obeying court orders on discovery.
A powerful argument can also be made, should the legislature fail to act, that New York State’s judicial authorities that created 22 NYCRR part 130 should be free to amend it to include the award of attorney’s fees against principals of entity parties. (See Woods v Lancet, 303 NY 349, 355 [1951] [“Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule”]; see also Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1 [1986], supra.)